R. Jay COOK, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–79–279.

Court of Criminal Appeals of Oklahoma.

Aug. 25, 1982.

Rehearing Denied Sept. 24, 1982.

Gene C. Howard, Tulsa, for appellant.

Jan Eric Cartwright, Atty. Gen., David W. Lee, Michael Scott Fern, Asst. Attys. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge.

R. Jay Cook was convicted of Embezzlement and False Accounts by an Officer pursuant to 21 O.S.1971, § 341, in the District Court of Muskogee County, Case No. CRF–77–148. He was sentenced to five (5) years' imprisonment and to pay a fine of five hundred dollars ($500.00). From the judgment and sentence, the appeal has been perfected to this Court.

In January, 1974 the appellant, R. Jay Cook, was appointed to the position of Special District Judge for Muskogee County, Oklahoma. In January, 1976, Judge Cook became Acting Associate District Judge with the responsibility of handling practically all of the business of the Muskogee County Court.

On June 18, 1976 Judge Cook's bailiff was arrested and charged with embezzlement. A full scale public investigation of the appellant's office then began at which time the appellant resigned as judge. The investigators found discrepancies in a number of traffic and misdemeanor files.

On March 17, 1977 a grand jury was impaneled to inquire into these discrepancies and on April 13, 1977 nine indictments were returned against the appellant. On April 25, 1977 the district attorney dismissed the indictments and immediately filed the same charges in the form of informations. Seven of the informations charged the appellant with Embezzlement and False Account by an Officer, one charged him with Perjury and one with Requesting and Accepting a Bribe.

The State elected to try the appellant separately on each information, with the first being CRF–77–148, the case from which this appeal is taken. The charges in this case, Embezzlement and False Accounts by a Public Officer arose out of the following facts.

On October 12, 1975, Robert Hamilton was arrested by the Oklahoma Highway Patrol in Muskogee County for the offenses of driving while intoxicated and carrying an open liquor container in his vehicle while operating it. Mr. Hamilton appeared in court four days later before the appellant, Special District Judge R. Jay Cook. When the appellant asked Mr. Hamilton how he wished to plead to the charges pending against him, Mr. Hamilton replied that he desired to plead "guilty."

After the other cases pending that morning had been disposed of, the appellant took Mr. Hamilton into his private chambers where he was informed that a five hundred dollar fine ($500.00) would be imposed for his offenses. Mr. Hamilton immediately proceeded to the First National Bank of Muskogee, Oklahoma, obtained a loan for five hundred dollars ($500.00) and returned to Judge Cook's private chambers.

Mr. Hamilton handed the five hundred dollars ($500.00) to Judge Cook but did not obtain a receipt. Judge Cook did not turn this cash fine payment over to Mary Mabrey, Deputy Court Clerk of the Muskogee County Clerk's office, who was the officer in charge of collecting and maintaining the records of fine money payments. No determination of the status of Mr. Hamilton's case was entered on the official Muskogee County courthouse records on this date.

Eight months later, on June 1, 1976, a notation was made that Robert Hamilton appeared and entered a plea of guilty. The notation was identified at trial as being in the handwriting of the appellant, Judge Cook. Not until three weeks later, June 26, 1976 is there any record that Mr. Hamilton's five hundred dollar ($500.00) fine was actually paid.

On this same date, Judge Cook resigned from office and also arranged for a rather sizeable loan to be taken out by him from the Muskogee Loan and Investment Company. Later that same day, as Judge Cook was "cleaning out his desk," he handed to his secretary, Joan Gregory, a number of court files concerning the traffic offense cases of several individuals and told her to take them down to the Court Clerk's office and dispose of them. He also gave her a stack of cash containing over one-thousand dollars ($1,000.00) as payment for the various cases. Ms. Gregory then took this money to Ms. Mabrey and they applied it to the various court files themselves. Mr. Hamilton, whose court file was included in this group, testified that he never appeared in June 1976, contrary to the information entered by Judge Cook, and did not pay any money into the court in June of 1976.

## I.

When the grand jury indictments were dismissed on April 25, 1977, no reasons were stated for the dismissal as required by 22 O.S.1971, § 815. The appellant concludes that this meant the original grand jury indictment was still in effect, therefore the district court did not have jurisdiction to proceed against him on the information in Case No. CRF–77–148. He also argues that the indictment was dismissed to prohibit his motion to quash the indictment, challenge to the grand jury panel and motion to dismiss the indictment from being considered, thus constituting a denial of due process of law.

On July 26, 1978, an order nunc pro tunc was recorded on the criminal appearance docket for that day. The order stated the indictment had been dismissed "for the purpose of refiling the charges alleged herein as criminal informations. . . ." This action cured any defect in the dismissal of the grand jury indictment.

Also the dismissal of the indictment in the instant case was not a condition precedent to the filing of an information. Historically it has been a common practice to charge by information, with the same offense, persons who have been indicted by a grand jury, in order to preclude technical attacks on the grand jury indictments. The indictment would be left pending while the prosecution was completed under the information, and a judgment of conviction or acquittal under the information would bar subsequent prosecution under the indictment, which could then be dismissed.

As early as In re McNaught, 1 Okl.Cr. 528, 99 P. 241 at 252 (1909) this Court stated ". . . the prosecution of felonies by indictment and information have been and are now, concurrent remedies." Further, 22 O.S.1971, § 817 provides that an order dismissing an indictment is not a bar to any other prosecution for the same offense.

█ The appellant moved to dismiss the grand jury indictments. He now alleges as error the fact that they were dismissed.

He does not allege prejudice occurred in the present case as a result of dismissal, nor do we find any existed. The first proposition of error is without merit.

## II.

Secondly, the appellant claims the information in this case was fatally defective for three reasons. It charged three separate and distinct crimes, the word "or" was used in describing one of the three crimes, and the appellant could also have been charged under a different statute. We find no merit to any of these allegations.

 The appellant was charged with and convicted of violating 21 O.S.1971, § 341, Embezzlement and False Accounts by an Officer. The information cited the language of § 341 directly in alleging that the appellant had appropriated "to his own use, without authority of law, certain money received by him as . . . Special District Judge . . . on behalf of this State . . . and did knowingly keep a false account or make a false entry in the official records . . . and did willfully omit to pay over to the State certain funds received by him . . . ." Three separate and distinct crimes are not delineated in the above language. Rather, the crime of embezzlement and ways it may be committed are described. As has been stated numerous times, there must be "a readily perceived connection between the things charged. If there is no reasonable connection one with the other, and they are disconnected transactions, the information is duplicitous, *Huckleberry v. State*, 64 Okl.Cr. 396, 81 P.2d 493 (1938). Because such was not the case here, no error occurred. See also, *Wiley v. State*, 349 P.2d 30 (Okl.Cr. 1960).

 The appellant's assertion that he did not know whether he was subject to charges under 21 O.S.1971, § 341, the em-

bezzlement and false accounts by a public officer statute, or under 21 O.S.1971, § 461, a statute prohibiting larceny or destruction of public records by a public officer, is frivolous. While the appellant could have been charged under 21 O.S.1971, § 461, the information specifically charged him with violating 21 O.S.1971, § 341. The public prosecutor has the discretion to select the offense for which an accused will be charged.

## III.

It is next alleged that error occurred because the appellant was forced to use peremptory challenges to dismiss two prospective jurors who should have been dismissed for cause, notwithstanding the fact that appellant waived his last challenge. Venireman Haley was the uncle of Gary Sturm, a special investigator to the district attorney and a chief prosecution witness in this case. Venireman Fite stated that she knew both Mr. Turpen, the prosecuting attorney, and Mr. Leeds, an attorney of the defense and also that she was the wife of a cousin of Julian Fite, the former district attorney who filed the information against the appellant.

 22 O.S.1971, § 660, 1 and 2 is relied upon for the proposition that a challenge for implied bias should have been allowed in these two instances.[1] It is readily apparent from reading the statute that the particular jurors complained of do not fall into any of the categories which would have allowed them to be automatically dismissed for cause. Neither of the prospective jurors was related by consanguinity or affinity within the fourth degree to the victim, the complaining party or the appellant nor stood in the relation of guardian and ward, attorney and client, master and servant or landlord and tenant, was a member of the family of the defendant, victim, complaining party, or in his employment on wages.

---

1. 22 O.S.1971, § 660(1) and (2), states:

A challenge for implied bias may be taken for all or any of the following cases, and for no other:

1. Consanguinity or affinity.
2. Standing in the relation of guardian and ward, attorney and client, master and serv-

ant, or landlord and tenant, or being a member of the family of the defendant, or of the person alleged to be injured by the offense charged, or on whose complaint the prosecution was instituted, or in his employment on wages.

■ Further, this Court has consistently held that it is not error alone that reverses judgments of convictions of crime in this State, but error plus injury, and the burden is upon the appellant to establish to the appellate court the fact that he was prejudiced in his substantial rights by the commission of error. *Thompson v. State,* 519 P.2d 538 (Okl.Cr.1974). In *Thompson,* supra, the defendant had exhausted all his peremptory challenges and was thereby precluded from removing a prospective juror from the panel whom he considered to be undesirable to his position. Substantial injury was found due to the court's denials of challenges for cause that should have been granted and the case was reversed. However, in the instant case, the record is silent and there is no contention that the appellant was precluded from removing a prospective juror whom he considered to be undesirable. The defendant's proposition is without merit. *Sallee v. State,* 544 P.2d 902 (Okl.Cr.1976).

## IV.

Fourthly, the appellant claims error occurred when the trial court admitted evidence of several other alleged offenses. Specifically these were four other incidents of alleged embezzlement on which informations had been filed. Instead of trying all the informations together, the State elected to try the Hamilton case first and bring in evidence from the other incidents to show a common scheme or plan.

■ While it is the general rule that evidence of other crimes is inadmissible, an exception is allowed when proving a common scheme or plan. *Burks v. State,* 594 P.2d 771 (Okl.Cr.1979). This exception has been allowed particularly in embezzlement trials where separate acts of embezzlement are often treated as a series or general scheme. *Byrum v. State,* 507 P.2d 1293 (Okl.Cr.1973). Still, it is necessary to show a relationship or connection between the crimes such that it is possible to infer the existence, in the mind of the accused of a plan or scheme with each crime comprising a part thereof. This does not mean the accused must have had a goal in mind or that the scheme or plan must have been logical. The commission of separate offenses characterized by a highly peculiar method of operation will suffice to show a common scheme. *Hall v. State,* 615 P.2d 1020 (Okl.Cr.1980).

In the present case numerous similarities exist which point toward a common scheme of embezzlement. The appellant admits each incident took place while he was presiding and that each minute file contained discrepancies. He alleges that they were all careless mistakes due to faulty accounting procedures in a harried atmosphere. The appellant denies any other similarities between the cases exist. However, we find this is not true.

In each case the individuals involved were arrested on charges of driving while intoxicated. In each instance the individual's case was assigned to be heard by Judge Cook. None of the individuals made an official courtroom appearance or was represented by an attorney. In each case, the individual pleaded guilty to a lesser offense and paid money in cash to the appellant, either directly or through an intermediary. All of the individuals involved testified there was no mention of a "pay-out plan" despite the fact in four of the five cases such a plan was endorsed in the official records. In each case the cash paid to Judge Cook in his private chambers was not promptly paid over to the court clerk in charge of accepting payments until after the individual concerned had inquired as to the status of his case or until after the appellant's resignation and the investigation of his office had begun.

■ We are therefore of the opinion that the evidence indicating that the appellant had committed similar offenses was properly admitted to show a systematic scheme to embezzle. However insofar as the evidence was introduced concerning the charges in CRF–77–152, CRF–77–153, and CRF–77–150, in order to prove this conviction, the State is estopped from proceeding further in those cases. *Chaney v. State,* 612 P.2d 269, 283 (Okl.Cr.1980).

## V.

The instructions given the jury concerning the evidence of other crimes allowed in to show a common scheme to embezzle were not improper. The appellant contends that the instructions given were essentially the same as those given and subsequently criticized by this Court in *McMahan v. State,* 354 P.2d 476 (Okl.Cr. 1960).

However, in *McMahan* the trial judge said: "Members of the jury, the State is now offering proof of other offenses. In the case at bar, the jury was instructed that: "... the Court has permitted certain testimony to come before you tending to show another offense...." True, the word offenses is used in both cases, but in *McMahan* the question of fact was not left open for the jury to consider. *Bewley v. State,* 404 P.2d 39 (Okl.Cr.1965).

In the present case, the trial judge left the decision to the jury as to whether or not the evidence actually constituted other offenses and if it did, what weight those offenses should be given in constituting a common scheme. As we said in *Bewley,* supra, at 42, "... it would have been better for the judge to use, in lieu of the word 'offense,' such words as 'acts', 'deeds', 'transactions', 'incidents', 'conduct', or 'dealings' ". The manner in which the instruction was given, the scope it covered, and its limiting effect for the jury's use allows us to conclude that it was a proper instruction.

## VI.

In the petition in error the appellant alleged that the District Attorney made an inflammatory and prejudicial closing argument. However, when the appellant received the transcript, he discovered that the closing arguments were omitted. The reason for this omission is that the arguments were not taken down stenographically, counsel having agreed, according to the transcript, that a tape recording would suffice, and the tape recorder malfunctioned. Next, the appellant filed a Motion to Supplement the Record along with an Objection to Trial Transcript and Motion to Reverse and Remand for New Trial, asserting that the omission of closing arguments from the transcript was through no fault of his own and denying that the above mentioned stipulation was made. The Court of Criminal Appeals ordered an evidentiary hearing on the issue of "whether there was a waiver of the shorthand transcription of the closing arguments at trial." At the hearing, held May 2, 1980, Judge Thomas found that "the Defendant did not enter into a conclusive waiver of the shorthand transcription of closing arguments."

The appellant testified that he "didn't want anything left out of the record," and that he and his lawyers assumed "she was taking it down." One of his lawyers, Mr. Leeds, also testified, denying that he or the defendant or his co-counsel, Mr. Howard (who did not appear but sent an affidavit to the same effect,) ever "waived" the taking of closing argument. He further claimed that he "ain't never and ain't never going to" waive the taking of closing argument. He did admit, though, that he did not specifically "request" the Court Reporter to stenographically record the arguments, but just assumed that she was doing so.

The State then presented two witnesses, District Attorney Turpen, who prosecuted the case, and Judge Larsen, who was the Trial Judge. Turpen testified unequivocally that the stipulation was made, not by Mr. Leeds, but by Mr. Howard at that conference at the bench before closing argument. Judge Larsen, too, though he could not remember which of the Defendant's lawyers made the stipulation, did testify that "both sides agreed that the tape would serve for the purpose of doing argument for the record." Judge Larsen further testified that he recalled no request by any of the attorneys of the Defendant for the Court Reporter to take down closing arguments in shorthand.

After thorough study of the statutes, prior case law and the particular facts in this case, we agree with the argument of the State that the test employed by the trial court at the evidentiary hearing was incorrect. In his Findings of Fact, the trial

judge placed much emphasis on the testimony and affidavits of the appellant and his lawyer that they never had, never would, and did not in this case "waive" the transcription of closing argument. Judge Thomas did not approach the issue by concerning himself with whether the appellant had requested that closing arguments be taken down in shorthand, but rather, focused on whether the disputed stipulation was made. The State agrees that the defense wanted the closing arguments included but argues that the defense simply failed to take the required steps to see that it was done.

This Court has consistently held that the responsibility for making certain that arguments of counsel are stenographically recorded rests on the person wishing to appeal. *Lewellyn v. State,* 489 P.2d 511 (Okl.Cr.1971). Failure of the defense to discharge this responsibility by making an affirmative request that arguments of counsel be taken down in shorthand has long resulted in this Court's inability to review bald allegations of prosecutorial misconduct during argument. *Stucker v. State,* 493 P.2d 84 (Okl.Cr.1972). Judge Thomas incorrectly relied on *Higgins v. State,* 506 P.2d 575 (Okl.Cr.1973) that there had to be a conclusive waiver of the shorthand transcription of closing arguments in the present case. In *Higgins,* we stated that:

> A defendant in a criminal case may waive any statutory or constitutional right either by express agreement or conduct or by such failure to insist upon it seasonably.

The Court concluded with the remark that it is up to counsel to preserve any suspected improper remarks of the prosecutor, including an affirmative "request to have them taken down in shorthand," and in the absence of such preservation, the issue cannot be reviewed on appeal. *Higgins* does not alter but rather confirms the longstanding rule that the responsibility of insuring that arguments of counsel are stenographically taken rests on the defendant. Accordingly, the test that should have been applied at

the evidentiary hearing is whether the appellant and his attorneys met their responsibility of "seasonably insisting" that the arguments be taken down in shorthand.

Applying that test to the facts testified to at the evidentiary hearing, we find that the appellant did not meet his responsibility of insuring that the Court Reporter take the closing argument stenographically. Defense counsel testified:

> Q. Do you specifically remember requesting that the Court Reporter take down the closing arguments in shorthand or on her machine?
>
> A. No, I don't remember specifically requesting it. I assumed she would, she is the Court Reporter.

Also, the appellant testified:

> Q. Do you recall any time during the closing arguments, were either of your attorneys requesting that an objection be recorded on the record?
>
> * * * * * *
>
> A. No, we were under the assumption she was taking it down.

This case is remarkably similar to *Pitts v. State,* 431 P.2d 449 (Okl.Cr.1968), wherein we stated:

> [Defense Counsel] argued before this Court that he presumed the court reporter's recorder was being used to record such arguments . . . . and, that since it had always been his practice to request the court reporter to report the closing arguments of this particular county attorney, and that in the past the reporter had always done so, he presumed such was being done in this case.

After observing that these "presumptions" were not sufficient to charge the trial court with error, this Court held:

> It has long been the rule that defense counsel has the responsibility to request, and such request must be made of the court reporter at each trial, when he desires to have the closing argument reported. It is defense counsel's sole responsibility to preserve and protect his own record, and that responsibility cannot be shifted to [the court reporter who is] not

a participant in our adversary system of jurisprudence.

Because defense counsel did not request that the court reporter stenographically take down the closing argument, but simply assumed she was doing so, the appellant failed to meet his responsibility to preserve the record for appeal. Accordingly, the appellant's contention of error in the closing argument will not be considered.

We conclude that the judgment and sentence imposed by the jury should be, and the same is hereby affirmed.

BUSSEY and CORNISH, JJ., concur.