**Walanzo Deon ROBINSON, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–90–670.

Court of Criminal Appeals of Oklahoma.

May 11, 1995.

Rehearing Granted Aug. 15, 1995.

---

123. 21 O.S.1981, § 701.13(C).

Chris Box, Oklahoma City, for appellant at trial.

Robert H. Macy, Gary Ackley, Dist. Atty., Oklahoma City, for state at trial.

Carol A. Walker, Asst. Appellate Indigent Defender, Norman, for appellant on appeal.

Susan B. Loving, Atty. Gen., A. Diane Blalock, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

### OPINION

LANE, Judge:

Appellant, Walanzo Deon Robinson, was tried by jury and convicted of the crime of First Degree Murder in violation of 21 O.S. 1981, § 701.7, Case No. CRF–89–4791 in the District Court of Oklahoma County, before the Honorable Bana Blasdel, District Judge. The jury recommended the Appellant be sentenced to death, finding that Appellant's murder of victim Dennis Hill was especially heinous, atrocious or cruel. The trial court sentenced accordingly. On appeal, Appellant raises seven propositions of error. We affirm the judgment and sentence of the trial court.

In the early morning hours of May 19, 1989, Dennis Eugene Hill was shot and killed on a street in northeast Oklahoma City. He was twenty-six (26) years old and sold crack cocaine for a living. The shooting took place in the vicinity of a popular bar and area known for drug trafficking, so there were many people present at the shooting, even though it took place between 1:30 and 2:00 a.m.

Earlier that evening, Hill and a man identified as "Bandit" argued with each other over either money, drug turf or both. According to eyewitness testimony, Bandit had a gun during that confrontation. The final confrontation between the two men was preceded by an argument over which of the two would get the other "busted". As the argument ended, Bandit fired a warning shot into the ground and Hill turned and ran. Hill was shot twice in the back, falling forward into the street. Bandit walked over to Hill and shot him twice more, once in the shoulder and once in the chest, while Hill asked why Bandit was shooting him.

Testimony placed Bandit at the scene, identified by no fewer than four witnesses. He was identified by name, clothing, and physical description. Although there were some inconsistencies in the clothing descriptions, Appellant was positively identified as "Bandit" and as the person who shot Hill. Appellant fled to California where he was arrested on September 7, 1989, on an outstanding Oklahoma City murder warrant. Additional facts will be discussed as they become relevant to Appellant's propositions of error.

Appellant first alleges there was insufficient evidence to support his convic-

tion. He claims that while several eye witnesses testified as to the events of the shooting, the testimony on the whole was insufficient to identify him as the killer. Both the State and Appellant agree that the test for determining the sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Drew v. State,* 771 P.2d 224, 227 (Okl.Cr.1989); *Riley v. State,* 760 P.2d 198, 199–200 (Okl.Cr.1988); *Gerrard v. State,* 731 P.2d 990, 992 (Okl.Cr.1987). After reviewing the testimony and evidence in this case, we find the evidence sufficient to support Appellant's conviction.

Testimony from numerous witnesses revealed some inconsistencies. However, on the whole, the story reported by all of the witnesses was remarkably similar. Hill and a man named Bandit argued over drugs and/or money, the second such argument of the day; Bandit took out a gun and shot Hill as he was running away; Bandit followed Hill and shot him twice more as he lay on the ground; Bandit left the scene; Hill died from the gunshot wounds. Appellant was identified as the shooter by two witnesses, and a third corroborated their recitation of events, although he was unable to identify Appellant as the shooter. Two other witnesses testified they knew Appellant as "Bandit" and had rented him their house which he used as a cocaine selling base. Appellant made incriminating statements to no fewer than three witnesses, and admitted to the arresting officer in California that he had been in Oklahoma to sell cocaine when the shooting occurred. Appellant also volunteered to the arresting officer, after being told only that he was wanted for murder in Oklahoma, that he was armed during the trip to Oklahoma but "... didn't have the .38, he had the .45." (Hill had been shot with a .38, but only the police, the medical examiner and the murderer had that information.)

Appellant fled to California, and asked the testifying witness who accompanied him, whether he, Appellant, could be extradited to Oklahoma from California. (Appellant had two guns in his possession upon his arrest, neither of which was the murder weapon.) He admitted to being a gang member, and that he sold drugs, as well as being the victim of no fewer than five (5) drive by shootings. Additionally, the physical evidence recovered from the scene and the condition of the victim's body corroborated the testimony given by the witnesses.

All of the witnesses, excepting the police officers, the medical examiner and Hill's brother, were former convicted felons, most with four or more priors. Most were also drug and/or alcohol users. Appellant's true complaint with respect to the sufficiency of the evidence is his assessment that the witnesses who testified were simply not credible, and therefore should not have been believed. Appellant attacked each witness' credibility during cross-examination, revealing their rather unsavory pasts, and the fact that most, if not all, were drug and alcohol users, and probably had used drug and/or alcohol on the day of the shooting.

 We have previously stated that any determination as to the credibility of a witness lies solely in the province of the jury. *Hollan v. State,* 676 P.2d 861 (Okl.Cr.1984); *Dodson v. State,* 674 P.2d 57 (Okl.Cr.1984); *Renfro v. State,* 607 P.2d 703 (Okl.Cr.1980). The task of resolving this conflict (weight and credibility of a witness' testimony) is not an appellate task. The job is properly vested with the jury which is the exclusive judge of the weight of the evidence and the credibility of the witnesses. *Scott v. State,* 808 P.2d 73, 76 (Okl.Cr.1991); *Raymond v. State,* 717 P.2d 1147 (Okl.Cr.1986). This Court accepts all reasonable inferences and credibility choices that tend to support the trier of fact's verdict, *Probst v. State,* 807 P.2d 279, 283 (Okl.Cr.1991); *Washington v. State,* 729 P.2d 509, 510 (Okl.Cr.1986), and we find the evidence here to be more than sufficient to sustain Appellant's conviction.

 At Proposition II, Appellant alleges he was deprived of a fair trial and sentencing proceeding, citing alleged improper prosecutorial tactics, remarks and arguments. An overview is necessary here. Appellant's arguments espoused here all refer to remarks made during trial, not one of which was objected to by defense counsel. As we noted

in *Jones v. State*, 764 P.2d 914, 917 (Okl.Cr. 1988):

> The general rule of this Court is that when the prosecutor makes an objectionable statement, it is incumbent upon defense counsel to call the statement to the attention of the trial court by making a timely objection. *Reid v. State*, 733 P.2d 1355 (Okl.Cr.1987.) Failure to make such an objection waives all but fundamental error on appeal. *VanWoundenberg v. State*, 720 P.2d 328 (Okl.Cr.1986) *cert. denied*, 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986).

*See also, Fox v. City of Tulsa*, 806 P.2d 79, 80 (Okl.Cr.1991); *Shelton v. State*, 793 P.2d 866, 871 (Okl.Cr.1990); *Thomason v. State*, 763 P.2d 1182 (Okl.Cr.1988); *Smith v. State*, 737 P.2d 1206 (Okl.Cr.1987) *cert. denied*, 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987); *Plunkett v. State*, 719 P.2d 834 (Okl. Cr.1986), *cert. denied*, 479 U.S. 1019, 107 S.Ct. 675, 93 L.Ed.2d 725 (1986); *Tucker v. State*, 620 P.2d 1314 (Okl.Cr.1980). As such, Appellant has waived all but plain error review with respect to the alleged improper statements, comments, arguments, and/or questions.

■ Appellant alleges error during both the first and second stage of trial, and his argument will be addressed accordingly. Prior to trial, Appellant filed a motion in limine requesting that any testimony concerning Appellant's gang involvement be forbidden, as there was no indication that the murder was a direct result of gang activity. The motion was granted and the prosecution instructed to admonish its witnesses.

During his examination of witness Rodney Carolina, Mr. Ackley, the prosecutor, asked Carolina what Bandit and Hill had been arguing about. The reply was as follows:

> **Carolina:** When I was approaching them, they was arguing about that he's not a— about the Blood and the Cuz. They was having a conversation about one wasn't a Blood and the other wasn't no Cuz, and more or less a racial, Cripple—however they—Crips conversation.
>
> **Court:** Could we approach the bench?

Ackley admitted he had failed to admonish the witness, stating the witness was not responsive to his question, and was not expected to give testimony concerning gang activity. At the court's instruction, Carolina was admonished, and the questioning continued, with no further mention of gangs. More importantly, defense counsel stated, during this same discussion:

> **Box (defense counsel):** I think if—maybe if counsel could just move on to another question, maybe it won't be emphasized to the jury. I'm not going to make any motion for a mistrial, because I don't think it's appropriate.
>
> **Court:** Okay. Okay. Thank you.

Carolina's remarks could hardly be considered "highly prejudicial", and even defense counsel thought the remark innocuous enough that he refused to ask for mistrial. There is no indication the testimony was purposely elicited in an attempt to deliberately violate the motion in limine. Rather, the response was the witness' honest, spontaneous explanation of what he saw and heard that night.

■ Appellant's next four sub-propositions allege error in the prosecutor's closing argument. He first claims the prosecutor improperly argued facts not in evidence when he urged that the fatal wound was inflicted after Hill had already been shot at least twice. Using only the medical examiner's testimony, Appellant might have an argument, since the examiner specifically testified he was unable to say which of the shots was fired first, although he could tell which shot was the fatal one. Appellant chooses to ignore the uncontroverted testimony of the several eyewitnesses who stated that Bandit first shot Hill twice in the back, then fired two more shots into his chest, after which Hill died. There is no dispute that the fatal wound was a front entry wound, and the two initial wounds, according to eyewitnesses, were back wounds. The medical examiner's inability to determine which shot entered first is not dispositive of the issue. The prosecutor's argument was that there were two shots in the back, two more in the chest, "... and it was one of those bullets that was the fatal bullet." There was more than sufficient evidence to support the prosecution's argument.

Appellant also claims this argument constituted second stage error, in that it went to whether the murder was especially heinous, atrocious or cruel, and was an attempt to inflame the jury's passions, distracting them from their responsibility of determining Appellant's innocence or guilt. Appellant never explains how he reaches this conclusion, nor does he point out how he was prejudiced by the argument. We will not do it for him.

He then alleges the prosecutor insinuated Appellant confessed to the homicide. The comment made by the prosecutor went to Appellant's voluntary statement made to the arresting officer in California wherein he stated that he, Appellant, had been in Oklahoma during the time of the murder, and had in his possession "... the .45, not the .38 ...", when the only people who knew that the murder weapon was a .38 were the Oklahoma City Police, the medical examiner and the murderer. The prosecutor characterized that remark as an admission of guilt, specifically stating that Appellant had never confessed to the crime. There was no "deliberate insinuation" that Appellant confessed. The statement was a fair comment upon Appellant's guilty knowledge of the murder weapon, and an admission against interest. Appellant's claim is unsupported by the record, and does not require reversal.

Appellant next claims the prosecutor told the jury to disregard evidence when he commented upon the discrepancies in witness testimony as to what the assailant was wearing the night of the murder, and to disregard critical evidence when determining Appellant's case. There was no objection made at the time the allegedly prejudicial statements were made, therefore Appellant has waived all but plain error with respect to these statements. *See, Jones v. State, supra; Fox v. City of Tulsa, supra.*

Appellant's description of the comments made is simply incorrect. The argument made by the prosecutor was proper commentary on the reasonable inferences to be drawn from the evidence presented. *Shelton v. State,* 793 P.2d 866, 871 (Okl.Cr.1990):

> The State's argument fell within the wide latitude possessed by both the defendant and the State to discuss freely, from their standpoint the evidence, as well as inferences and deductions arising therefrom. Reversal will occur only when argument by counsel for the State is grossly improper and unwarranted on some point which may affect the defendant.

* * *

Appellant does not advise this Court as to how these remarks affected him, therefore, we will not address this argument.

*See also, Behrens v. State,* 699 P.2d 156 (Okl.Cr.1985); *Costilla v. State,* 609 P.2d 788 (Okl.Cr.1980).

We have long held that counsel for both the defendant and the State must be accorded a liberal freedom to argue the evidence and its logical inferences during closing arguments. *Jones v. State,* 738 P.2d 525, 530 (Okl.Cr.1987); *Lewis v. State,* 732 P.2d 1 (Okl.Cr.1987); *Koonce v. State,* 696 P.2d 501, 508 (Okl.Cr.1985). We have examined the statements identified by Appellant as objectionable and do not find any error. The argument made was that the discrepancy in the description of the clothing worn by the assailant was outweighed by the other evidence presented showing Appellant was the killer. There is no error here, nor are the instances cited by Appellant evidence of the prosecutor presenting arguments which were "wholly unsupported" as alleged.

Appellant next claims the prosecutor improperly elicited the jury's sympathy for Hill because he referred to the killing as "an execution". As with the other alleged improper comments, Appellant made no contemporaneous objection to the statements, waiving all but plain error. *Jones, supra; Fox, supra.* More importantly, there is nothing in the record to support Appellant's conclusion that the statements resulted in prejudice to Appellant, much less that the resulted prejudice warrants reversal or modification. It is not error alone that reverses judgments of conviction of crime in this state, but error plus injury, and the burden is upon the appellant to establish for the appellate court the fact that he was prejudiced in his substantial rights by the commission of the error. *Elmore v. State,* 846 P.2d 1120, 1123 (Okl.Cr.1993); *Crawford v. State,* 840 P.2d

627, 634 (Okl.Cr.1992); *Edington v. State,* 806 P.2d 81, 83 (Okl.Cr.1991); *Cook v. State,* 650 P.2d 863, 868 (Okl.Cr.1982); *Harrall v. State,* 674 P.2d 581, 583 (Okl.Cr.1984).

The evidence is overwhelming that Hill was shot twice in the back, and then twice more as he lay on the ground begging for assistance and asking his assailant why he had been shot. The description used by the prosecution was fairly supported by the evidence and does not constitute error.

█ Appellant next alleges the prosecutor improperly commented on the lack of defense witnesses. Again, no contemporaneous objection was made at trial, waiving all but plain error. Appellant's claim now is that the remarks made deliberately implied he did not call any witnesses because it would have damaged his case. The comment cited by Appellant was as follows:

> **Mr. Macy (prosecutor):** ... If you want to talk about the witnesses we called, I tell you what, we called the witnesses who were there, and he has the same subpoena power that we do. Anyone that we didn't call, he could have called had he wanted to, had they had anything that would have helped his client in any way.

The statement was made in rebuttal to Appellant's closing argument wherein defense counsel cast aspersions upon the credibility of the State's witnesses and questioned its case in general.

The same argument was made in *Koonce v. State,* 696 P.2d 501 at 508 (Okl.Cr.1985), where the prosecutor commented that "... not a person ... took the stand and rebutted what happened". We found no error, recognizing this Court has routinely held it to be proper comment for the prosecutor to note that the State's evidence was not controverted. *Koonce* at 508, citing *Gamble v. State,* 554 P.2d 23 (Okl.Cr.1976). We find here that the prosecutor's comment was not improper and there was no error.

█ Appellant then alleges the prosecutor improperly expressed his opinion as to Appellant's guilt. Once again, the statement complained of was not objected to at trial and we review for plain error only. Counsel for both the defendant and the State must be accorded a liberal freedom to argue the evidence and its logical inferences during closing arguments. *Jones v. State,* 738 P.2d 525, 530 (Okl.Cr.1987); *Lewis v. State,* 732 P.2d 1 (Okl.Cr.1987). However, this does not mean that the prosecutor is allowed carte blanche in summarizing for the jury the presentation of the State's case. This Court does not condone prosecutor's comments encouraging the jurors to allow improper sympathy, sentiment or prejudice to influence their decisions. *Shelton v. State,* 793 P.2d 866, 872 (Okl.Cr.1990); *Grant v. State,* 703 P.2d 943 (Okl.Cr.1985). Likewise, it is improper for a prosecutor to express his personal opinion of the guilt of the accused. *Bryson v. State,* 876 P.2d 240, 257 (Okl.Cr.1994); *McCarty v. State,* 765 P.2d 1215, 1220 (Okl.Cr.1988). *See, Oklahoma Code of Professional Responsibility,* 5 O.S.1981, Ch. 1, App. 3; *ABA Standards for Criminal Justice,* The Prosecution Function, Sec. 3–5.8(b) (1980).

However, while the prosecutor's comments are not to be condoned, we do not believe that they were so grossly improper as to require reversal or modification. We do not find the comments were so prejudicial as to have affected the jury's verdict. *See, Fisher v. State,* 736 P.2d 1003, 1009 (Okl.Cr.1987), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988); *Vaughn v. State,* 697 P.2d 963 (Okl.Cr.1985).

Appellant's argument alleging second-stage misconduct reiterates many of the arguments addressed during the first-stage misconduct proposition and will be summarily addressed here. Appellant's argument is premised upon the assertion that the evidence presented did not support imposition of the death penalty. We disagree. Appellant's overall contention with respect to the various misconduct allegations is that the State improperly attempted to appeal to the passions and prejudices of the jury in finding Appellant should receive the death penalty. We find there was ample evidence presented supporting imposition of the death penalty and find no error in the sentencing stage rising to the level of prosecutorial misconduct.

█ Appellant first alleges the prosecution argued facts not in evidence when it alleged the fatal wound was inflicted after Hill fell to the ground. As noted above, there was more than sufficient evidence indicating Hill was alive after being shot in the back. No error here. He also claims the prosecutor improperly argued that Hill drowned and suffocated in his own blood. The evidence presented showed that the fatal gunshot wound to the chest caused massive internal bleeding, and that Hill was gasping for breath and bleeding from his mouth. As such, the conclusion that Hill suffocated on his own blood could be supported by the evidence, and Appellant is unable to show the harm that was allegedly caused by the statement. Once again, reasonable inferences from the evidence presented are proper grounds for argument. *See, Nguyen v. State,* 769 P.2d 167 (Okl.Cr.1988), *cert. denied,* 492 U.S. 938, 110 S.Ct. 27, 106 L.Ed.2d 639 (1989).

█ He next alleges the prosecutor improperly suggested that Hill begged for his life. In closing arguments, Mr. Macy suggested that Hill's question to Appellant after being shot as to why Appellant was shooting him, indicated Hill was, "for all practical purposes", begging for his life. At least two witnesses testified Hill asked Appellant why Appellant had shot him, and exclaimed "What's going on? What's going on?" as Appellant stood over him with the gun. Appellant cites to *Marshall v. State,* 537 P.2d 423 (Okl.Cr.1975) in support of his proposition, however in that case the statement alleging the deceased begged for his life was subsequently proven false, this Court finding that there was no evidence to support the prosecutor's statement. That is not the case here.

Hill's statement could more properly be classified as one of surprise or incredulity, as anyone might be expected to make in the same or similar situation. As such, the question posed to the killer was not in the form of an entreaty, nor did it constitute "begging for his life". Nonetheless, we do not find the prosecutor's statement grounds for reversing Appellant's conviction or sentence. While it may have been error for the State to allege

Hill "for all practical purposes" was begging for his life, the Appellant must establish both error and injury to secure relief from this Court. *Elmore v. State,* 846 P.2d 1120, 1123 (Okl.Cr.1993); *Crawford v. State,* 840 P.2d 627, 634 (Okl.Cr.1992); *Edington v. State,* 806 P.2d 81, 83 (Okl.Cr.1991); *Cook v. State,* 650 P.2d 863, 868 (Okl.Cr.1982); *Harrall v. State,* 674 P.2d 581, 583 (Okl.Cr.1984). We find no reversible error here.

█ Appellant next claims the prosecutor purposely misstated the law relating to the heinous, atrocious or cruel factor, lessening the State's burden of proof and prejudicing Appellant's constitutional right to have his sentence determined by a properly instructed jury. Appellant confuses the argument here. There is nothing in the record showing that the jury was not properly instructed. In fact, Appellant cites to the record the State's recitation to the jury that the definition of heinous, atrocious or cruel is defined in the jury instructions. Appellant's complains of the State's use of the term "serious physical injury" instead of "serious physical abuse", claiming the two are different, and that the intentional use of the word injury instead of abuse resulted in fundamental, reversible error. He further claims the State misstated the law as applied to the heinous, atrocious or cruel factor.

We are unable to say that the prosecutor's use of the term "serious physical injury" was an intentional misuse of terms calculated to mislead the jury and prejudice Appellant. There was no contemporaneous objection to the use of term, and Appellant admits that the State used the term "serious physical abuse" in addition to the term "serious physical injury". The terms were used interchangeably during the State's argument of the presence of the aggravating factors, describing the shots to the victim's back while fleeing, Hill's seeing Appellant standing over him with a gun, Hill's entreaty to Appellant to explain why he was shooting, the additional shots fired into his chest as Hill lay helpless on the ground, Hill's cry to bystanders to call for help, and his subsequent death. All were within the permissible range of argument, and were accurately used to describe "serious physical abuse".

With respect to the statement that a finding of serious physical abuse met the qualifications for heinous, atrocious or cruel, both sides agree that the jury was properly instructed as to the definition of those terms. As such, any error which may have occurred with the inappropriate description is cured by the proper instruction. Appellant's argument is only persuasive to the extent he can show that the jury failed to follow the instructions as given. No such showing was made.

■■■■ Appellant next claims the State improperly invoked the jury's sympathy for Hill during closing argument, by repeatedly referring to the murder as an "execution", suggesting that Hill bled to death, suffocated and drowned in his own blood, describing in detail the circumstances of the murder and by referring to the injustice of Hill being "26 forever", lying dead in his grave while Appellant is "... sleeping in a clean bed, three meals a day, and his family coming down and visiting with him ..."

As to those comments, we once again review for plain error only, as there was no objection to the comments at trial. The same argument arises in sub-proposition five where Appellant claims the State urged imposition of the death penalty appealing to the jury's sense of civic duty and on the basis of their emotions. Again, no objection. While, we find these remarks improper, we do not find that they were so atrocious as to amount to plain error. Nor do we find that the cumulative effect of these harmless errors deprived the defendant of a fair trial or resulted in an excessive sentence. *Trice v. State*, 853 P.2d 203, 214 (Okla.Cr.1993). Taken in context, we note the prosecutor in his closing statement, reminded the jury that his comments were not evidence, that comments made during closing represented the State's position on any particular issue, and that he (Macy) would not attempt to inject his personal opinion into the case. This statement, together with the preliminary comments, the judge's admonition, the jury instructions, and the closing argument as a whole, did not prejudice the Appellant's right to a fair trial. *See, Roberts v. State*, 868 P.2d 712, 718 (Okla. Crim.App.1994).

■■■ Appellant next claims the State sign-posted its argument to play upon the jury's societal fears. We find that the comments cited were nothing more than a statement as to Appellant's gangster mentality, his disregard for the serious nature of the offense and proper comment by the State in its attempt to show the aggravating circumstance of continuing threat to society. Appellant then claims the State improperly recited from the Bible. The comment by the prosecutor as to whether Appellant had ever read the Bible verse that says "Thou shalt not kill" was in response to Appellant's assertion of his newfound religious fervor, which included reading of Bible verses and incorporating them into songs. We find no error here, especially in light of the jury's failure to find the continuing threat aggravator.

■■■ At Proposition III, Appellant claims that his death sentence should be vacated because the state presented insufficient evidence to support the heinous, atrocious and cruel aggravating circumstance. He alleges the evidence presented by the medical examiner was insufficient to support the prosecutor's argument that the victim's death was preceded by torture or serious physical abuse, or that the victim actually endured physical or mental suffering.

■■■ Evidence supporting a finding that a murder was especially heinous, atrocious or cruel requires proof that the death was preceded by torture or serious physical abuse. *Revilla v. State*, 877 P.2d 1143, 1155 (Okl.Cr.1994); *Stouffer v. State*, 742 P.2d 562, 563 (Okl.Cr.1987); *Fox v. State*, 779 P.2d 562, 576 (Okl.Cr.1989); *Fowler v. State*, 779 P.2d 580, 588 (Okl.Cr.1989); *Foster v. State*, 779 P.2d 591 (Okl.Cr.1989); *Rojem v. State*, 753 P.2d 359, 369 (Okl.Cr.1988). As we have been called upon to examine the condition of "serious physical abuse", we have found it to be supported by facts revealing not only the manner of killing, but the killer's attitude, and the suffering of the victim. *See Nuckols v. State*, 690 P.2d 463 (Okl.Cr.1984); *Williamson v. State*, 812 P.2d 384 (Okl.Cr.1991); *Thomas v. State*, 811 P.2d 1337, 1349 (Okl.Cr. 1991); *Nuckols v. State*, 805 P.2d 672, 675 (Okl.Cr.1991) (opinion on post-conviction).

As much as we would like to point to specific, uniform criteria, applicable to all murder cases, which would make the application of the "heinous, atrocious or cruel" aggravator a mechanical procedure, that is simply not possible. Rather, the examination of the facts of each and every case is necessary in determining whether the aggravator was proved. Unfortunately, no two cases present identical fact scenarios for our consideration, therefore the particulars of each case become the focus of our inquiry, as opposed to one case's similarity to another, in resolving a sufficiency of the evidence claim supporting the heinous, atrocious or cruel aggravator.

The State did not specifically introduce any evidence as to this aggravating circumstance during the second stage of trial, choosing instead to incorporate into the second stage all of the evidence of the Appellant's behavior and the decedent's injuries introduced during the first stage. This evidence included expert testimony that the decedent died from a gunshot wound, with the fatal bullet entering his left chest, and then traveling across the body, piercing his left lung, his heart and his right lung, lodging, finally, in the right chest wall. The wound caused massive internal bleeding, and although it would not have been survivable, it was not instantly fatal. Rather, Hill remained conscious for some period of time, which could have been as long as several minutes, although there was no testimony delineating the actual length of time he remained conscious. Even though he could not say in what order the gunshot wounds were inflicted (there were a total of four), the medical examiner was able to state that the fatal wound was not a back wound.

In addition to the medical examiner's testimony, and in stark contrast to Appellant's cited cases, there was testimony from no fewer than five eyewitnesses who described Hill's death and the surrounding events. Appellant, approximately three weeks before the shooting, set up a drug distribution operation in northeast Oklahoma City, and was continually armed. Appellant argued with Hill the day before the murder, alleging Hill was taking Appellant's crack customers, prominently displaying his gun throughout the confrontation. At the time of the shooting Hill and Appellant argued and as Hill, unarmed, turned and walked away from Appellant, shot him twice in the back. Hill fell to the ground, turned over and said "What's going on, what's going on?", at which point Appellant walked up to him and shot him twice more and then calmly walked away. Hill then asked bystanders to call an ambulance.

Carolina ran down the street to Hill's brother's house, related what had happened, and ran back to where Hill lay in the street. By then, Hill was bleeding from his mouth and gasping for air, but apparently made no other statements. Carolina left before help arrived.

Appellant asks this Court to find that there was no evidence of serious physical abuse because Hill, apparently, died rather quickly and there was no testimony from the medical examiner stating that Hill's injuries were painful. It is reasonable to infer from the testimony that Hill was in pain: he knew he had been shot and asked for medical assistance. Appellant repeatedly threatened Hill, and argued with him on more than one occasion (within approximately a five hour period), purposely shot him in the back after causing him to flee, and then calmly walked over and finished the job as Hill, incredulously, asked Appellant what was going on. Hill suffered massive internal bleeding, asked at least three different people for assistance, was bleeding from the mouth and gasping for air, as Appellant told others he "shot the nigger" because "he shouldn't have been talking shit". The fact that there was no exact time frame specifying how long Hill remained conscious or how long it took for him to die is not dispositive.

Appellant's citation to *Brown v. State*, 753 P.2d 908 (Okl.Cr.1988) is inapplicable here. In *Brown* the medical examiner was unable to state which of the seven gunshot wounds the victim sustained was the fatal shot. Here, the uncontroverted evidence is that the two wounds to the back were fired first and were not fatal. The additional evidence presented by numerous witnesses leaves no doubt that Hill was alive and conscious as the killer fired the fatal rounds into his chest.

Likewise, *Crawford v. State,* 840 P.2d 627 (Okl.Cr.1992) is distinguishable. In *Crawford* there was no evidence the victim was conscious at the time of death or that the death was not instantaneous. That was not the case here. There was more than sufficient evidence of Hill's "conscious physical suffering prior to death" to support the aggravator, as the undisputed evidence, recited above, showed that Hill remained conscious long enough to turn over, ask for help, and question Appellant as to why he was being shot, before being shot twice more in the chest. Hill was described as gasping for breath and bleeding from the mouth, while calling for help, at least for some period of time, before dying from his wounds.

■ When the sufficiency of the evidence of an aggravating circumstance is challenged on appeal, the proper test is whether there was any competent evidence to support the State's charge that the aggravating circumstance existed. In making this determination, this Court should view the evidence in the light most favorable to the State. *Woodruff v. State,* 846 P.2d 1124 (Okl.Cr.1993); *Brogie v. State,* 695 P.2d 538, 542 (Okl.Cr. 1985), modified on other grounds, 760 P.2d 1316 (Okl.Cr.1988).

■ In the present case, the jury was instructed in accord with the Uniform Jury Instructions:

As used in these Instructions, the term "Heinous" means extremely wicked or shockingly evil; "Atrocious" means outrageously wicked and vile; "Cruel" means pitiless, or designed to inflict a high degree of pain, utter indifference to, or enjoyment of the suffering of others.

While the actual physical suffering of the victim is an important element in the application of the heinous, atrocious and cruel aggravator, it is clearly not the only element. *Nuckols v. State,* 805 P.2d 672, 676 (Okl.Cr. 1991) This circumstance includes consideration of the manner of killing as well as the killer's attitude to determine whether it was atrocious or cold and pitiless. *Nuckols, supra,* at 674, *Liles v. State,* 702 P.2d 1025, 1032 (Okl.Cr.1985).

Appellant made no secret of the fact that he intended to retain his drug territory at all costs, even if that meant killing Hill. He threatened Hill and purposely frightened him into running from Appellant by firing his gun into the ground near Hill's feet. He shot Hill as he ran, and, knowing that Hill was trapped, calmly walked over and looked into Hill's face as he shot him. He leisurely walked away, confiding in witnesses that he killed Hill for no other reason than that he was "talking shit".

Considering the manner of this killing, the suffering of the victim, the attitude of the killer, and the pitiless nature of this crime, we cannot say, construing the evidence in the light most favorable to the state, that the jury's finding of the heinous, atrocious and cruel aggravator was not supported by sufficient evidence.

Appellant's Proposition IV attacks the constitutionality of the heinous, atrocious or cruel standard, alleging it is applied inconsistently and is unconstitutionally vague. We have repeatedly rejected this argument, and will not revisit the issue here. *See, Hogan v. State,* 877 P.2d 1157, 1168 (Okl.Cr.1994); *Romano v. State,* 847 P.2d 368 (Okl.Cr.1993), *aff'd* — U.S. —, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994); *Fisher v. State,* 845 P.2d 1272 (Okl.Cr.1992), *cert. denied,* — U.S. —, 113 S.Ct. 3014, 125 L.Ed.2d 704 (1993); *Williamson v. State,* 812 P.2d 384, 408 (Okl. Cr.1991), *cert. denied,* — U.S. —, 114 S.Ct. 2122, 128 L.Ed.2d 677 (1994).

■ At Proposition V, Appellant claims testimony given by the arresting California police officer injected an evidentiary harpoon into the proceedings, prejudicing Appellant's right to a fair trial. We note again that there was no objection to the comment made, and therefore will review, once again, for plain error only. An evidentiary harpoon occurs when the following factors are present: (1) an experienced police officer, (2) makes a voluntary statement, (3) which is wilfully jabbed, (4) in order to inject information of other crimes, (5) the statement is calculated to prejudice the accused, and (6) is prejudicial to the rights of the accused on trial. *Langley v. State,* 813 P.2d 526, 527 (Okl.Cr.1991). The action com-

plained of does not meet the criteria necessary to constitute an evidentiary harpoon and therefore we find Appellant's argument to be without merit.

While the State was examining the arresting California police officer, Mathieu, he testified, when questioned about his assigned duties during the relevant time period, that he was "working the gang task force in the 77th area." The next day, Appellant's trial counsel made a record concerning the remark, wherein he stated he felt the remark was unintentional, he did not think the testimony was purposely elicited and that he did not object to the comment to avoid emphasizing what was basically a one line statement, which he thought "went right over the heads of the jury, that it was just a standard answer to a question, and I believed that Mr. Macy, in his follow-up questions after this was said, did dilute the statement that was made ...". All parties agree the defense's Motion in Limine granted by the judge barred any testimony as to Appellant's gang affiliation and activities, and gangs in general. When questioned by the trial court, defense counsel stated that he purposely chose not to object to the remark because he felt that the problem, if there was one, was cured by the State's subsequent questioning, and "... I do not feel it harmed my client in any way.". The court also questioned the officer who said he was aware of the motion, but felt the only proper response to the question was the one he gave. When informed by the court that the decision was not his to make, Mathieu's testimony the next day eliminated any reference to his assignment to the gang task force.

The comment does not fit the criteria of a harpoon for several reasons. Specifically, it was given in response to a question, and not gratuitously injected; there is no evidence the comment was "willfully made", "intended to prejudice the defendant" or that it was "prejudicial to the defendant's rights at trial". Nor was there any mention of other crimes, as it is not a crime to be a gang member. The comment was descriptive of Mathieu's job assignment and made no reference to Appellant's gang involvement or affiliation. Additionally, Appellant's claim of

prejudice is refuted by the jury's refusal to find Appellant a continuing threat to society based upon his gang affiliation as presented in the second stage, proceedings. (During that phase evidence introduced showed that not only is Appellant a gang member, but he had been the victim and/or target of no less than five gang-related drive-by shootings and involved in numerous gang-related drug distribution schemes and activities.) Nothing in the record indicates Mathieu's comment rose to the level of an evidentiary harpoon, or that the comment resulted in prejudice to Appellant warranting reversal or modification.

At Proposition VI Appellant alleges he was denied effective assistance of counsel. He cites several instances of alleged ineffective assistance, including counsel's failure to request a cautionary instruction as to eyewitness identification, failure to object to the aforementioned evidentiary harpoon, failure to object to alleged prosecutorial misconduct and failure to object to an improper in-court demonstration.

We judge claims of ineffective assistance of counsel in light of the Supreme Court's guidelines established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We considered the application of the test in *Pierce v. State,* 786 P.2d 1255 (Okl.Cr.1990), and held:

> We have long held that allegation of incompetency of counsel will be judged by "whether counsel exercised the skill, judgment and diligence of a reasonably competent defense attorney in light of his overall performance." *Fisher v. State,* 736 P.2d 1003, 1011 (Okl.Cr.1987); *Cotton v. State,* 679 P.2d 1305, 1308 (Okl.Cr.1984). In review of such a claim, we are to accord a strong presumption that counsel was at least constitutionally competent. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We will not make this judgment in hindsight, second guessing counsel's trial strategy. *Dutton v. State,* 674 P.2d 1134 (Okl.Cr. 1984).

In *Dutton v. State,* 674 P.2d 1134 (Okl.Cr. 1984), we held:

> A criminal defendant should receive reasonably competent assistance of counsel.

*Johnson v. State,* 620 P.2d 1311 (Okl.Cr. 1980). However, this does not mandate flawless counsel or counsel judged ineffective by hindsight. *Clark v. Blackburn,* 619 F.2d 431 (5th Cir.1980). *See also Johnson,* 620 P.2d at 1313.

With these tenets in mind, we have reviewed the argument raised by Appellant and, having examined the record before us, we cannot say that the representation afforded Petitioner during the proceedings fell below the standard established in *Strickland, supra.* The determining criteria is whether, but for counsel's alleged omissions or commissions, the result of the trial would have been different. We do not find that criteria here.

■ Appellant first argues counsel should have requested a cautionary instruction on eyewitness identification, claiming that the identification testimony at trial was suspect since both witnesses who identified Appellant had only seen him once before, and that the description given to police by witness Carolina was very general and could have applied to numerous black men in the Oklahoma City area. While we have recognized that there are situations wherein a cautionary instruction is necessary in the area of eyewitness identification, this is not one of those situations.

Appellant cites *McDoulett v. State,* 685 P.2d 978 (Okl.Cr.1984) in support of his contention, but fails to identify for this Court the "potential for injustice" present in the instant action. In *McDoulett* we applied the *Kloiber*[1] test used by the Pennsylvania Supreme Court in determining the need for a cautionary instruction concerning eye witness identification. We stated:

"Thus, in cases in which the eyewitness identification is a critical element of the prosecution's case and serious questions exist concerning the reliability of that identification, a cautionary instruction should be given which advises the jury regarding the factors to be considered. . . .

We find that the circumstances set forth in Kloiber and in OUJI–CR 820 should not be viewed as exclusive. Another factor that should be considered in determining the need for a cautionary instruction is the accuracy of the witness' prior description of the assailant." *McDoulett* at 980–981.

In *McDoulett,* the witness had been hypnotized to assist in identifying the assailant. She had been awakened in the middle of the night by the defendant, had her eyes covered and admitted defendant was behind her at all times during the assault. She admitted she only saw the defendant's reflection in a mirror for approximately 3 to 5 seconds at night in a darkened house, and her identification given the police varied significantly from defendant's actual appearance and the in-court identification.

While we agree that eyewitness identification is important here, there is no "serious question" concerning the reliability of the identifications given. Carolina and Johnson both positively identified Appellant, and never wavered in that identification. Those identifications comported with the previous descriptions given to the police and there was no inaccuracy or misidentification prior to the trial testimony. The fact that they had never seen Appellant before does not mean Appellant was entitled to a cautionary instruction. In fact, we would wager that in a great number of crimes the assailants and victims have not seen each other before. That is not one of the criteria for the use of the cautionary instruction.

■ Likewise, the witnesses' general identification of Appellant given to the police does not constitute sufficient reason for use of the cautionary instruction. As we stated in *Johnson v. State,* 727 P.2d 965, 970 (Okl. Cr.1986), a cautionary eyewitness identification instruction is not necessary where no serious question exists concerning the reliability of the identification.

The eye witnesses identifying Appellant were subject to cross-examination, and it was during that time that counsel sought to impeach their identification by pointing out the apparent conflict in the description of the assailant's clothing, and the conditions at the time of the incident (i.e., darkness, the distance between the witnesses and the assailant, the fact that the witnesses had only seen

---

1. *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820 (1954).

the assailant on one other occasion, the lack of outside lighting or illumination, etc.). Appellant has failed to show either that the instruction was required in this situation or that the result would have been different had the instruction been given. As such, the standard instruction regarding weight and credibility of witness testimony to be considered by the jury was more than sufficient to allow the jury to ascribe the proper value to the testimony in determining Appellant's guilt or innocence. We find no error here.

▇▇▇▇ Appellant next claims counsel failed to object to the alleged evidentiary harpoon cited in Proposition V. Our response here is made in light of our finding that Officer Mathieu's comment was not an evidentiary harpoon.[2] Appellant's ineffective assistance claim is unsupported by the record, and counsel's failure to object, as reflected in the record, was a strategical call in an attempt not to draw attention to the remark in question. We will not second guess counsel's trial strategy. *Dutton v. State,* 674 P.2d 1134 (Okl.Cr.1984).

At his next sub-proposition, Appellant claims ineffective assistance by counsel's failure to object to alleged prosecutorial misconduct. We have found no prosecutorial misconduct (see discussion at Proposition II and its sub-propositions), and it would therefore be impossible to find ineffective assistance based on such a claim. At best, Appellant's complaint goes to the strategy chosen by trial counsel, and, once again, we refuse to second guess that strategy. *Dutton, supra.*

▇▇▇▇ Appellant next alleges counsel failed to object to what he terms an improper in-court demonstration. During examination of witness Opothleyahola Hudson the State asked her to describe the gun she saw Appellant carrying on the night of the shooting. Upon providing a description, and upon being asked the size of the second of two guns Appellant had in his possession, she held up her hands, indicating the length of the second gun to be approximately eight inches (8") long. We fail to see how this description of the gun in Appellant's possession rises to an

"in court demonstration". Nor do we find the testimony to have been incompetent, irrelevant and/or highly prejudicial. Nothing in Appellant's argument indicates how an objection to the response would have resulted in his not being found guilty as charged. We find no error here. There is no merit to Appellant's ineffective assistance of counsel claim.

▇▇▇▇ As his final allegation of error, Appellant claims that the jury charge on "minimum mitigating circumstance" violated his right to full consideration of the mitigating evidence, requiring this Court to vacate his death sentence. In support of his contention, Appellant alleges the instruction concerning mitigating circumstances is so unartfully drafted that the jury could have thought they were precluded from considering additional, unlisted mitigating circumstances in the event they found none of the mitigating circumstances listed in the instruction. He then cites case authority for the proposition that precluding jurors from considering mitigating circumstances is reversible error.

Once again Appellant fails to reach the proper conclusion with his analysis. Most interesting of all is Appellant's failure to cite to this Court exactly which mitigating factors the jury was precluded from considering, what facts he has showing there was no consideration given to them, and the prejudice caused by this alleged failure. We note that the jury was properly instructed as to the definition of mitigating evidence; that they could consider any and all mitigating evidence they found applicable to the facts and circumstances of the case; that they were not limited to the minimum mitigating circumstances, if any, found from the evidence in the case; and what was or was not a mitigating circumstance was a determination for the jury to make. The instructions given correctly stated the applicable law. *See, Bryson v. State,* 876 P.2d 240, 262 (Okl.Cr. 1994); *Pickens v. State,* 850 P.2d 328, 339 (Okl.Cr.1993).

---

**2.** Mr. Carolina's response to the question concerning the argument between Hill and Appel-

lant likewise does not constitute an evidentiary harpoon as Carolina is not a police officer.

## MANDATORY SENTENCE REVIEW

Pursuant to 21 O.S.Supp.1987, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of an aggravating circumstance as enumerated in 21 O.S.Supp.1981, § 701.12. After carefully reweighing the aggravators and all mitigating evidence, we have determined that the "heinous, atrocious or cruel" aggravator upon which the death penalty was based was factually substantiated, and amply supported by the evidence presented at trial. We further find no indication in the record that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor.

We find no error present in Appellant's case warranting reversal, modification or dismissal, and therefore AFFIRM the judgment and sentence of the trial court.

JOHNSON, P.J., CHAPEL, V.P.J., and LUMPKIN and STRUBHAR, JJ., concur.