Dion Athanasius SMALLWOOD,
Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–93–514.

Court of Criminal Appeals of Oklahoma.

Oct. 13, 1995.

Rehearing Denied Dec. 28, 1995.

Barry Albert, Assistant Public Defender, Oklahoma City, for defendant at trial.

Fern Smith, Sandra Stensaas, Assistant District Attorneys, Oklahoma City, for the State at trial.

James Dennis, Assistant Public Defender, Oklahoma City, for appellant on appeal.

Susan Brimer Loving, Attorney General of Oklahoma, William L. Humes, Assistant Attorney General, Oklahoma City, for appellee on appeal.

### OPINION

LANE, Judge:

Appellant, Dion Athanasius Smallwood, was charged with murder in the first degree (Malice Aforethought) and third degree arson. He was convicted May 13, 1993 on both counts after a two-stage jury trial in the District Court of Oklahoma County, Case No. CF–92–809 before the Honorable Leamon Freeman, District Judge. After the sentencing stage proceeding, the jury recommended Appellant be sentenced to death on the murder charge and 15 years and fined $10,000.00 for the arson. The trial court sentenced accordingly. Appellant appeals, challenging both the guilty verdicts and the sentences imposed for the crimes. We affirm.

### Summary of Facts

Late on the evening of February 5, 1992, Oklahoma City police and fire fighters were called to the intersection of Oklahoma and Wilshire Boulevard to the scene of a car fire. After extinguishing the fire, a badly burned body was discovered in the back seat of the vehicle. A check run on the vehicle's license number revealed that it was registered to Lois Frederick of Oklahoma City. Simultaneously, Oklahoma City police were at Fred-erick's home investigating a missing person's report filed by her family. The body in the car was identified as Lois Frederick, and an autopsy revealed that she had died as a result of a severe head injury and smoke inhalation.

On February 5, 1992, Appellant arrived at Frederick's Oklahoma City home located at 4225 N.W. 57th Street, at approximately 4:00 p.m. Frederick, a 68 year old white female, lived at the home with her daughter, Terry Jo, Appellant's girlfriend. Terry Jo was not home when Appellant arrived there looking for her. Appellant's relationship with Terry Jo had begun in January of 1991, and was marked with numerous incidents of physical abuse. The two had lived together, off and on, during most of 1991, but Terry Jo had recently moved back in with her mother approximately one month before the murder. Lois Frederick made no secret of the fact that she disapproved of and did not like Appellant. Likewise, animosity between Terry Jo and Lois was well known to neighbors, family, and the Oklahoma City police, who had been called to the residence on numerous occasions to resolve disputes between the two.

Appellant testified he arrived at Frederick's home intending only to look for Terry Jo. He walked into the residence, uninvited, knowing he was not welcome, and immediately encountered Lois. She asked Appellant to leave, grabbing his arm in the process. Appellant then pushed her away, causing her to fall over backward. Lois, advising Appellant she would "make him pay" for his actions, attempted to call police, but Appellant took the phone from her and smashed it. The confrontation continued, with Appellant conducting a room to room search of the house, looking for Terry Jo, with Lois in tow. During that time, Appellant again struck Lois in the face, knocking her to the ground and bloodying her nose.

As the two entered one of the bedrooms, Lois attempted to clean up, washing the blood from her face in the adjoining bathroom. Appellant testified that Lois came out of the bathroom and kicked him in the shin. He responded by grabbing a croquet mallet,

and telling Lois that he had no "beef" with her. He testified Lois then brandished a knife at him, at which point he struck her once in the head with the croquet mallet. He left Lois in the bedroom, closing the door behind him, after hearing her choking. He had no recollection of Lois moving after he initially hit her, and thought he had killed her.

Appellant then attempted to clean up the house, wiping blood from various surfaces with a pair of Lois' socks, turning the bed mattress over to conceal a large blood stain, and placing various items in a trash bag which he then took to the garage. He closed the front door after making sure that no one was watching him, and eventually wrapped Lois' body in the sheets and a bedspread from the bed, and laid her in the back seat of her car.

At about 6:30 p.m., a 9–1–1 call was received from Lois' sister, Louise Chapman[1], and Oklahoma City police officer Kevin Washa went to Frederick's house to check on her. Washa tried to enter the house after getting no response, but the doors were locked. He left after looking in the windows of the house and seeing no one.

Upon hearing Washa's knock on the door, Appellant hid in a storage closet to avoid detection. Lois' body had already been placed in the car, and Appellant left the residence in her car after Washa left the scene. Appellant claims he drove around for some time, trying to decide what to do. He called a friend, David Macias, requesting assistance, telling Macias he thought he had killed somebody. Macias refused to help, and Appellant eventually stopped at a gas station and purchased some gasoline which he put in a plastic container given to him by the gas station personnel.

Appellant testified he splashed the gasoline around the outside of the car and on the front seat, but denied pouring any on Lois' body.[2] He then set the car afire and ran home to his apartment approximately two miles away. Passersby saw the fire, and attempted to extinguish it with a fire extinguisher, but were unable to do so.[3] The blaze was eventually extinguished by the Oklahoma City Fire Department.

Appellant's arguments and Propositions of Error will be addressed in the sequential order of the trial, beginning with the first stage proceedings.

### First Stage Proceedings

■ Appellant claims fundamental error at Proposition XI, alleging the State excluded prospective juror Spears, a black woman, on the basis of race, failing to refute Appellant's Batson[4] objection and prima facie case of purposeful discrimination. A review of the record indicates no such discrimination. Pursuant to Batson, as modified by Powers[5],

1. Louise Chapman testified she had received a call from Terry Jo around 6:00 p.m. on the 5th telling her Appellant had threatened to go over and kill Lois and Terry Jo if Terry Jo did not meet him at a specified time and location. Terry Jo also told Chapman that she had driven by Lois' house and the door, which Lois always kept closed, was open. In response to the call, Chapman called 9–1–1, and the police investigated.

2. Testimony indicated Frederick's body had been doused with gasoline. The medical examiner, Dr. Chai Choi testified that the body was so severely burned she was unable to tell if there were any defensive wounds, or other cuts, abrasions, contusions, etc., on the body. Testimony was that Frederick's head literally exploded from the heat, making a determination of the number of skull fractures impossible, and preventing a determination of whether or not Frederick immediately lost consciousness from the blow(s) inflicted by Appellant.

3. Witness Randy Sheppard testified that he saw Lois' leg move as he and Goebel Music, Jr. tried to extinguish the fire. Goebel testified he saw no such movement. Testimony from the medical examiner indicated such a movement could have been involuntary, caused by the fire.

4. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

5. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). The Supreme Court held in Powers that under the equal protection clause, a defendant has standing to object to race-based exclusions of jurors through peremptory challenges whether or not the defendant and excluded jurors share the same race. Black v. State, 871 P.2d 35 (Okl.Cr.1994). Nevertheless, it is worth noting here, for purposes of our discussion concerning the entire pool of jurors that were excluded, that Appellant is Hispanic and the excluded juror was black.

Appellant is required to prove that (1) he is entitled to rely upon the fact that peremptory challenges constitute a practice that could allow discrimination and (2) show any other relevant circumstances which raise an inference that the prosecutor used that practice to exclude veniremen from the jury on account of their race. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723.

The guidance provided by the Supreme Court in *Batson* indicated the following:

> In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a *prima facie* case of discrimination against black jurors.

*Id.* at 96–97, 106 S.Ct. at 1723.

█ A review of the record in this case reveals that there was no "pattern" of striking minority jurors. The jurors stricken prior to juror Spears were all white, five female, one male. The remaining black juror (apparently the only one at that point in the proceedings) was not excused. The explanation given for striking Spears was her psychology background (as Appellant had indicated he intended to use a diminished capacity defense), her status as a student, and the State's concern, despite her answers to the contrary, that she would be "very weak" in considering imposition of the death penalty.

The trial court determined there was no pattern of striking minority jurors, and noted for the record that this particular juror had been observed during voir dire wearing radio headphones and being generally inattentive to the proceedings around her.

As we noted in *Black v. State,* 871 P.2d 35, 43 (Okl.Cr.1994), it is very difficult to establish a pattern based on the striking of one black juror. Combined with the record made concerning this particular juror, we find that Appellant did not meet the *prima facie* burden raising the inference that Spears was excluded because of her race. We find no error here.

At Proposition III, Appellant alleges error in the admission of evidence [6] obtained during his questioning, which he now claims was the result of an illegal detention. Appellant alleges that after being placed in the police car to be taken for questioning he was never free to leave and was therefore under arrest, although the police had no probable cause to arrest him. As a result, he now claims that all evidence seized from him during that time period should be suppressed, and that he is entitled to a new trial. We disagree.

Resolution of this issue turns on whether Appellant was under arrest at the time he was transported to, and subsequently questioned, at the Oklahoma City police station. An examination of the record in this case reveals that he was not. The present case is remarkably similar to *Johns v. State,* 742 P.2d 1142, 1149 (Okl.Cr.1987), wherein we determined that the statement given to police was admissible in light of the appellant's behavior and the resulting police response.

In *Johns,* the appellant voluntarily accompanied the officers to the police station for questioning; the testifying officer stated the appellant was not under arrest at that time,

---

**6.** Appellant objected to the introduction of his February 6, 1992 taped interview (Exh. 189); his signed search waiver (Exh. 228); a tape of his February 11, 1992 conversation with Detective Kuhlman (Exh. 219); Appellant's fingerprint card (Exh. 161); a diagram of Appellant's fingerprint (Exh. 253); all items or photos taken from Appellant's apartment pursuant to a search warrant; Appellant's shoes taken during his interview with the police, as well as any photographs and/or charts of the same; Appellant's blue jean jacket (Exh. 190), socks (Exh. 192) and baseball cap (Exh. 193) taken during his February 6, 1992 police interview; and photographs of Appellant taken at the Oklahoma City jail. Appellant repeatedly objected to the introduction of any and all evidence seized from his person during his police interview and from his apartment, and any evidence which was a by-product of those original items.

and that he would not have transported him to the station against his will. Once at the station, appellant made his statements voluntarily after first being advised of his *Miranda*[7] rights and executing a written waiver. We distinguished *Johns* from *Hayes v. Florida,* 470 U.S. 811, 815–17, 105 S.Ct. 1643, 1647, 84 L.Ed.2d 705 (1985), because the record revealed Johns had voluntarily accompanied the officers to the police station. *Johns,* 742 P.2d at 1149, *citing State v. Hoffpauir,* 44 Wash.App. 195, 722 P.2d 113, 115–16 (1986). As such, we found Johns' statements were not the result of an illegal arrest. *Id., citing Ellis v. State,* 652 P.2d 770, 771 (Okl.Cr.1982).

■ Appellant testified at trial that he voluntarily accompanied the officers to the police station; he was never told he was under arrest; he never told the police that he did not wish to speak to them. Furthermore, a review of Appellant's taped interview establishes that he was aware he was not under arrest from the beginning of his conversation with Oklahoma City police Detectives Scott and Kuhlman. After being told he was a suspect in Frederick's murder, Appellant was read his *Miranda*[8] rights. Upon being asked if he understood those rights, Appellant then specifically asked if he was under arrest. After being told that he was not, Detective Scott then asked Appellant if he still wished to speak to them, without an attorney present, to which Appellant responded affirmatively.

Detective Scott testified that he requested Appellant to accompany him to the police station for questioning concerning Lois Frederick's murder, and Appellant agreed. Scott admitted Appellant was handcuffed and transported downtown in a patrol car, but stated the action was not taken at his direction. He only became aware of that occurrence upon reaching the station, at which point Scott personally removed the handcuffs.[9] Scott also testified that he did not have probable cause to arrest Appellant at the time of the questioning, and, had Appellant requested to leave the station or discontinue the interview, Scott would have complied with Appellant's wishes. Prior to questioning, Appellant was read his *Miranda* rights and subsequently signed a search waiver.

During the course of the questioning, Appellant allowed the officers to examine his jacket, shirt, shoes, hat and socks. Scott testified it was after examining the items of clothing that he thought there was sufficient probable cause to detain Appellant. Appellant was allowed to use the phone to contact his mother, during which time officer Scott overheard Appellant requesting that his mother contact Barry Albert, and questioning was discontinued.[10] After conferring with the district attorney, Scott determined there was probable cause to detain Appellant and he was arrested. Appellant never did confess to the crime during questioning, and in fact repeatedly denied any knowledge of or participation in the crime.

7. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

8. Appellant's trial testimony contained the following exchanges:
 State: What did they [the detectives] say to you?
 Appellant: They said, "We need to ask you some questions about the death of Lois Frederick."
 S: So what happened next?
 A: They said, "We need to speak with you;" so I just took it as, you know, I went. I went along.
 S: You did go with them?
 A: I did.
 S: Voluntarily?
 A: Yes.

9. Appellant did not own a vehicle, and Detective Scott had him transported to the station in a

• patrol vehicle, pursuant to department policy favoring transport in a patrol cruiser if one is available. Scott further testified he did not transport Appellant in his detective cruiser because it contained items taken from the two crime scenes the evening before and morning of the questioning. Testimony from Scott indicated he never told the transporting patrol officer Appellant was under arrest and the officer handcuffed Appellant without Scott's approval or authority.

10. Scott informed Appellant he was familiar with Mr. Albert (who subsequently served as Appellant's trial counsel), and interpreted Appellant's request to his mother as an invocation of his right to counsel, at which point questioning was discontinued and the interview was terminated.

We cannot say from the record before us that Appellant's statement was obtained as the result of an illegal arrest. He admitted he voluntarily accompanied the police, although with some trepidation. The fact that Appellant was intimidated by being in the presence of the police is not determinative of the voluntariness of his submission to questioning. He was read his *Miranda* rights, signed waivers, specifically asked if he was under arrest, talked willingly with police and voluntarily gave them his clothing. We find no error here.

Appellant claims at Proposition VI the trial court erred in allowing the admission, over Appellant's objection, of allegedly prejudicial hearsay statements made by Terry Jo Frederick to Officer Washa. Washa testified Terry Jo arrived home the evening of the murder as he, Washa, was in the process of investigating Frederick's disappearance. Washa described Terry Jo as anxious, frantic, and excited, and indicated that initially he had no idea what she was trying to tell him. Eventually he understood her to say Appellant had her mother, and that he (Appellant) had threatened to kill Lois if she (Terry Jo) refused to meet him that day.

Appellant's objections were overruled, the trial court admitting the statements under the excited utterance exception to the hearsay rule. Appellant claims the statements were inherently unreliable as Terry Jo was, at the time of trial, a suspect in her mother's death, and the statements were the result of Washa's questioning.

Hearsay is not admissible except as provided by law. 12 O.S.1991, § 2802. The "excited utterance" exception to the rule allows admission of [a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. 12 O.S. 1991, § 2803(2). We have previously outlined the foundational requirements that must be met for this exception to apply, which are: (1) a startling event or condition; (2) a statement relating to the startling event

or condition; and (3) the statement must be made while the declarant is under the stress of excitement caused by the [event or] condition. *See Griffith v. State*, 734 P.2d 303, 305 (Okl.Cr.1987); *Rawlings v. State*, 740 P.2d 153, 163 (Okl.Cr.1987).

We find the exception applicable here. The record reveals that the statements were the result of Terry Jo's discovery of her mother's disappearance. Testimony that she appeared anxious, excited and frantic at the time the statements were made provided sufficient basis to support the trial court's finding. Appellant's claim that the statements were in response to questions from Officer Washa are unfounded. Testimony was that his questions were asked in response to her statements, and in an attempt to understand what she was saying. We find no error here.[11]

Appellant next alleges it was error to allow admission of substantially the same statement made by Terry Jo to her aunt, Louise Chapman. Chapman testified Terry Jo told her, during a phone call, that Appellant was going over to kill Frederick. In response to that call, Louise called 9-1-1 requesting that someone check on Frederick. Appellant objected, alleging hearsay. The State's response was that the statement was not admitted to show the truth of the matter (that Appellant actually went over to kill Frederick), but rather to explain why Chapman called 9-1-1.

"Hearsay" is defined, in relevant part, as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted ..." 12 O.S. 1991, § 2801(3). An examination of Chapman's testimony reveals that questioning centered around why she initiated the contact with 9-1-1, requesting assistance in locating her sister. Whether or not Terry Jo's statements were true, Chapman's response was to call 9-1-1. As such, the statement was not admitted to prove Appellant acted in

---

11. Appellant's citation to *Byrd v. State*, 657 P.2d 183, 187 (Okl.Cr.1983), as authority requiring some indicia of reliability of the trustworthiness of Terry Jo's statement, is misplaced as *Byrd* has

been specifically overruled with respect to this requirement. *See Griffith v. State*, 734 P.2d 303, 305 (Okl.Cr.1987); *Rawlings v. State*, 740 P.2d 153, 163 (Okl.Cr.1987).

accordance with Terry Jo's statement, but merely to show why Chapman called for assistance. However, even if we determined that the statement was hearsay and erroneously admitted, the error is harmless. Substantially the same statement was made to Washa and properly admitted.

Additionally, Terry Jo later testified and was subject to cross-examination concerning that statement.[12] "[T]here is no reversible error where the declarant testifies in court and is subject to cross-examination, regardless of whether opposing counsel actually questions the declarant." *United States v. Wolf*, 839 F.2d 1387, 1395–96 (10th Cir.1988), *cert. denied*, 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988); *McClendon v. State*, 777 P.2d 948, 952 (Okl.Cr.1989).

At Proposition V, Appellant claims the admission, during the first stage of trial, of evidence of his other crimes and bad acts violated due process. This Court has consistently held that it is not error alone that reverses the lower court's judgments, but error plus injury, and the burden is upon the appellant to establish the fact that he was prejudiced in his substantial rights by the commission of the alleged error. *Elmore v. State*, 846 P.2d 1120, 1123 (Okl.Cr.1993); *Crawford v. State*, 840 P.2d 627, 634 (Okl.Cr. 1992); *Edington v. State*, 806 P.2d 81, 83 (Okl.Cr.1991); *McKinnon v. State*, 752 P.2d 833, 835 (Okl.Cr.1988); *Harrall v. State*, 674 P.2d 581, 583 (Okl.Cr.1984); *Cook v. State*, 650 P.2d 863, 868 (Okl.Cr.1982). We find no such prejudice here.

■ The testimony Appellant complains of was given by Terry Jo Frederick in a non-responsive answer to the State's questions. During Terry Jo's questioning concerning her relationship with Appellant, she stated that there were occasions when she would try to leave their residence when Appellant would prevent her from doing so by putting knives up to her throat. Appellant objected, and the State explained in a bench conference that the testimony solicited was unintentional, and that the witness was being non-responsive. As a result, the trial court

ordered the witness cautioned, which was done, and Appellant's objection was overruled. Appellant requested no further relief, and no further testimony along those lines was elicited from the witness. Since Appellant requested no further action, the witness was cautioned and no further testimony elicited along those lines, we find that any potential error was cured by the trial court's actions.

■ We also find no error in comments made by the State during closing that Appellant physically abused Terry Jo Frederick, creating animosity between Appellant and the victim, or in the admission of a letter written by Lois Frederick concerning Appellant's theft of her car. Appellant testified to the physical abuse perpetrated on Terry Jo and the confrontation with Lois concerning the theft of her vehicle. In the event the admission was error, we find it harmless in light of Appellant's testimony and admissions that he caused the victim's death.

■ At Proposition X, Appellant alleges his conviction must be reversed because the trial court allowed photographs to be introduced into evidence that were more prejudicial than probative. "Whether to introduce photographs of a homicide victim is a decision largely within the trial court's discretion", *Hooks v. State*, 862 P.2d 1273, 1280 (Okl.Cr.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994). Such a determination will not be disturbed absent a showing of abuse of discretion. *See McCormick v. State*, 845 P.2d 896 (Okl.Cr. 1993); *Lampkin v. State*, 808 P.2d 694 (Okl. Cr.1991); *Lamb v. State*, 767 P.2d 887 (Okl. Cr.1988). We have consistently held that the test for admissibility of a photograph is not whether it is gruesome or inflammatory, but whether its probative value is substantially outweighed by the danger of unfair prejudice. *Mitchell v. State*, 884 P.2d 1186, 1196 (Okl.Cr.1994); *Hooks*, 862 P.2d at 1280; *Clayton v. State*, 840 P.2d 18, 28 (Okl.Cr. 1992), *cert. denied*, 507 U.S. 1008, 113 S.Ct. 1655, 123 L.Ed.2d 275 (1993).

12. Terry Jo denied telling either Chapman or Washa that Appellant threatened to kill her

mother if she (Terry Jo) did not meet with him.

■ We have previously determined that photographs of murder victims can be probative in many respects. *Hooks*, 862 P.2d at 1281. They can show the nature, extent and location of wounds, establish the corpus delicti, corroborate testimony of medical examiners and expert witnesses and depict the crime scene. *Hooks*, 862 P.2d at 1281; *Nguyen v. State*, 769 P.2d 167, 171 (Okl.Cr.1988), *cert. denied*, 492 U.S. 925, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989), *overruled in part on other grounds, Green v. State*, 862 P.2d 1271, 1273 (Okl.Cr.1993). Appellant's willingness to concede that there is no dispute over the identity of the victim or the injuries sustained is not determinative of the photographs' admissibility. *Hooks*, 862 P.2d at 1281; *Williamson v. State*, 812 P.2d 384, 400 (Okl.Cr.1991), *cert. denied*, 503 U.S. 973, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992).

■ The four color photographs [13] Appellant complains of were pictures of Lois Frederick's burned body, three of her in the burned vehicle, and one of her laid atop a body bag. Appellant argues the photographs were unnecessary and therefore inadmissible because there was no dispute that Frederick's body had been burned, and the pictures gave no insight as to whether or not she was either alive or conscious at the time of the burning. While it is true there was no dispute as to the burning, it is not true that the pictures were not probative of other aspects of the State's case. Specifically, they corroborated the medical examiner's testimony, testimony of the fire investigators as to the presence of an accelerant and Terry Jo's testimony as to what her mother was wearing when she saw her last. The photos also indicated Frederick was partially unclothed at the time of the fire, and disputed Appellant's testimony that Frederick did not move after he placed her in the car and that he did not douse her body with accelerant [14]. Furthermore, after examining the photographs

we do not find that they are so gruesome or prejudicial as to warrant exclusion.

■ Appellant's objection to the admission of Exhibit 262 during first stage was upheld. However, his objection to the same photo was overruled and it was admitted during the second stage of trial. The State argued the photograph showed the crime was heinous, atrocious and cruel, and was used to refute Appellant's contention that he was deserving of mercy. In *Bryson v. State*, 876 P.2d 240, 258 (Okl.Cr.1994), *cert. denied*, ––– U.S. –––, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995) we upheld the introduction of gruesome photographs used to prove a murder especially heinous, atrocious or cruel because the pictures showed the victim's death was preceded by torture or serious physical abuse. The photographs introduced here, especially Exhibit 262, are probative of whether Frederick suffered serious physical abuse prior to death. They directly refute Appellant's testimony that Frederick never moved from the time he placed her in the car, and, when viewed in conjunction with the other crime scene photos, refute Appellant's assertion that he did not douse Frederick in gasoline, but only splashed the accelerant on the front seat of the vehicle. We are unable to sympathize with Appellant when he complains that the photos are graphic and are somewhat confused that he would expect them to be otherwise. As we noted in *McCormick*, 845 P.2d at 898, "[g]ruesome crimes result in gruesome pictures." We find no error or abuse of discretion here.

■ At Proposition IV, Appellant alleges that various instances of prosecutorial misconduct, both first and second stage, deprived him of a fair trial. We will address the first stage claims here, the second stage claims to be addressed along with the other alleged second stage errors. We begin by reiterating that error alone is insufficient to require reversal. Appellant must show not only that error occurred but that the result-

---

13. State's Exhibits 29, 32, 237 and 262. Exhibits 29, 32 and 237 were admitted during first stage; Exhibit 262 admitted during second stage.

14. Appellant testified that Frederick's car was parked in the garage with the driver's door next to the garage wall, necessitating placement of her body in the car from the passenger's side of the vehicle. He testified that he placed her head first into the vehicle, with her head on the driver's side of the car. A review of Exhibits 29 and 32 clearly shows the top portion of her body is facing the passenger's side of the vehicle.

ing prejudice from the error was such that reversal is warranted. *Elmore,* 846 P.2d at 1123; *Crawford,* 840 P.2d at 634; *Edington,* 806 P.2d at 83; *McKinnon,* 752 P.2d at 835; *Harrall,* 674 P.2d at 583; *Cook,* 650 P.2d at 868.

■■■■■■ Appellant claims the State denigrated and personally attacked him when it argued during first stage closing that he was making up a story and not being truthful (Proposition IV.C.) Reviewed in context, the comment made went to the wealth of physical evidence presented at trial which contradicted Appellant's testimony of the events leading to Lois Frederick's death. It is well established that it is improper to call a witness or defendant a "liar" or to say that he or she is "lying." *Williams v. State,* 658 P.2d 499 (Okl.Cr.1983); *Cobbs v. State,* 629 P.2d 368, 369 (Okl.Cr.1981). Nevertheless, it is permissible to comment on the veracity of a witness when such is supported by the evidence. *Fritz v. State,* 811 P.2d 1353, 1359 (Okl.Cr.1991); *Thomason v. State,* 763 P.2d 1182, 1183 (Okl.Cr.1988); *Goulsby v. State,* 742 P.2d 567, 571 (Okl.Cr.1987); *Robertson v. State,* 521 P.2d 1401, 1402 (Okl.Cr.1974). More importantly, such comment was proper in light of Appellant's own testimony that not only were his statements to police untruthful, but that his actions from the time he bludgeoned Frederick with the mallet were designed to prevent his arrest at any cost. We find no error here.

■■■■ Comments allegedly made by the prosecution as to facts not in evidence were either not objected to and are therefore waived, or were proper commentary on evidence presented at trial (Proposition IV.E.). The general rule of this Court is that defense counsel must object, in a timely manner, to objectionable statements. Failure to do so waives all but plain error. *Simpson v. State,* 876 P.2d 690, 693 (Okl.Cr.1994); *Jones v. State,* 772 P.2d 922, 925 (Okl.Cr.1989); *Van-Woundenberg v. State,* 720 P.2d 328 (Okl.Cr. 1986), *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986).

■■■■ The only statement objected to was the inference, according to Appellant, that he sexually assaulted Frederick. Appellant testified that he bludgeoned Frederick in anger, and burned her body, thinking she was already dead, hoping to destroy evidence that he was her killer. Evidence elicited at trial indicated the body was so badly burned it prevented any determination as to Frederick's state of consciousness at the time of death. Likewise the condition of the body made it impossible to tell if any other wounds might have been inflicted prior to her demise, although the medical examiner was able to determine that her hyoid bone had been broken, indicating the possibility of strangulation.

Appellant's testimony revealed that he arrived at the house at about 4:00 p.m. and did not leave until 6:30 p.m. Fire investigators testified that the upper portion of Frederick's body was unclothed when found. The comment made by the State was that there was no way to tell exactly what had happened to Frederick during that 2½ hour time period, inferring that Appellant might have had motives for burning her body other than eliminating fingerprints or other evidence of his presence.

■■■■ We have long held that counsel for both the defendant and the State must be accorded a liberal freedom to argue the evidence and its logical inferences during closing arguments. *Jones v. State,* 738 P.2d 525, 530 (Okl.Cr.1987); *Lewis v. State,* 732 P.2d 1 (Okl.Cr.1987). We have examined the statements identified by Appellant as objectionable and find no error occurred. Reasonable inferences were drawn by the State, based primarily on Appellant's testimony. *Allen v. State,* 871 P.2d 79, 96 (Okl.Cr.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 370, 130 L.Ed.2d 322 (1994); *Trice v. State,* 853 P.2d 203, 214 (Okl.Cr.), *cert. denied,* —— U.S. ——, 114 S.Ct. 638, 126 L.Ed.2d 597 (1993); *Romano v. State,* 847 P.2d 368, 380 (Okl.Cr. 1993), *aff'd, Romano v. Oklahoma,* —— U.S. ——, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994); *Nguyen v. State,* 769 P.2d at 172; *Winterhalder v. State,* 728 P.2d 850 (Okl.Cr.1986).

■■■■ Appellant next asserts at Proposition IV.G. that the State failed to comply with his discovery request and the trial court's discovery order when it did not pro-

vide him with a copy of letters Appellant wrote to his ex-wife after the murder, implicating Terry Jo in her mother's murder. The State used the letters while cross-examining Appellant. His complaint is not that he was prejudiced by the introduction, but that the trial court failed to sanction the State for the alleged violation. A review of the record indicates that Appellant's discovery request was for information which would negate his guilt or reduce his punishment in the event he was convicted. The letter in question does neither. While Appellant would have been entitled to the document pursuant to *Allen v. District Court of Washington County*, 803 P.2d 1164 (Okl.Cr.1990), *modified by Richie v. Beasley*, 837 P.2d 479 (Okl.Cr.1992), he is also required to ask for it, which he did not do. There was no violation of the discovery order. Appellant has not shown he was prejudiced by the State's failure to turn over the letter, even were we to find it a violation of the discovery order. More importantly, we fail to see how the trial court's failure to sanction the State resulted in prejudice to Appellant. It is Appellant's burden to establish injury or prejudice in addition to any alleged error before this Court will reverse a judgment of conviction. *Elmore*, 846 P.2d at 1123; *Crawford*, 840 P.2d at 634; *Edington*, 806 P.2d at 83; *McKinnon*, 752 P.2d at 835; *Harrall*, 674 P.2d at 583; *Cook*, 650 P.2d at 868.

Proposition VI.I. accuses the State of "name-calling" and unprofessional conduct, alleging the conduct resulted in defense counsel being distracted to the point of being unable to represent Appellant. While the referenced portion of the record contains an unfortunate exchange between defense counsel and the State, we do not find that it rose to the level of error, nor do we find that Appellant was prejudiced by counsels' actions.

■ Appellant next alleges various errors in the instructions given to the jury. He first claims at Proposition II that it was error for the trial court to refuse his requested self-defense instruction after he testified the victim kicked him in the shin and approached him with a knife. Even accepting Appellant's version of the day's events, his own testimony gives sufficient reason for the trial court's refusal to instruct on self-defense.

Appellant testified he entered the home surreptitiously, knowing Frederick would not allow him in; he immediately confronted Frederick, pushing her backward over two tables, causing her to bleed; he hit the victim in the face with his fists, bloodying her nose; he chased the victim to the kitchen and smashed the phone so she could not call for help; he shut the front door preventing her from leaving the premises; he forced her through the house, looking for Terry Jo, and refused to let her leave. After cleaning some of the blood off of herself, Frederick emerged from a bathroom and kicked Appellant. Appellant admits the kick did not hurt him, which is especially believable considering the victim's age and stature, not to mention her fear of Appellant and her physical condition after being pushed and punched by him. Appellant then claims Frederick pulled a knife on him at which point he threatened her, and subsequently bludgeoned her, with a croquet mallet.

■ According to his own testimony, Appellant was the aggressor in this situation, and to suggest a self-defense instruction in the situation described above is, at best, offensive. When the record reveals no evidence of self-defense, the trial court is not bound to instruct on that defense. *West v. State*, 798 P.2d 1083, 1085 (Okl.Cr.1990). We find this argument to be without merit.

■ Appellant claims in the same proposition it was error to refuse his requested instructions on Second Degree Murder (depraved mind), First Degree Manslaughter, and Felony Murder. We note that the giving of instructions on lesser included offenses rests within the sound discretion of the trial court, and such rulings will not be disturbed absent a showing of abuse of discretion. *Crumley v. State*, 815 P.2d 676, 678 (Okl.Cr.1991). Where the evidence does not reasonably support a conviction on a lesser included offense, or where the evidence provides no support for the defendant's theory of the case, the instruction should not be given. *Hooker v. State*, 887 P.2d 1351, 1361

(Okl.Cr.1994); *Ellis v. State,* 867 P.2d 1289, 1297 (Okl.Cr.1992), *cert. denied,* —— U.S. ——, 115 S.Ct. 178, 130 L.Ed.2d 113 (1994); *Duvall v. State,* 825 P.2d 621, 627 (Okl.Cr. 1991), *cert. denied,* 506 U.S. 878, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992); *Fowler v. State,* 779 P.2d 580, 585 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 775 (1990); *Lamb,* 767 P.2d at 890; *Hale v. State,* 750 P.2d 130 (Okl.Cr.1988), *cert. denied,* 488 U.S. 878, 109 S.Ct. 195, 102 L.Ed.2d 164 (1988); *Crumley,* 815 P.2d at 678; *Mann v. State,* 749 P.2d 1151 (Okl.Cr. 1988), *cert. denied,* 488 U.S. 877, 109 S.Ct. 193, 102 L.Ed.2d 163 (1988); *Bennett v. State,* 743 P.2d 1096 (Okl.Cr.1987). We find no abuse of discretion and no evidence from the record supporting Appellant's claim that the instructions were warranted.

 The purpose of 21 O.S.1991, § 701.8 (defining second degree murder) is to "cover those situations where one commits acts imminently dangerous to others which evinced a depraved mind, but where there was no premeditated intent to kill any particular person." *Dennis v. State,* 561 P.2d 88, 94–95 (Okl.Cr.1977); *Lamb,* 767 P.2d at 890. Appellant's case is nothing like the second degree murder example of shooting into a crowd given in *Dennis* where the likelihood of death is probable, but there is no intent to kill a particular person. *Dennis,* 561 P.2d at 95. Given the evidence presented at trial, the only reasonable inference to be drawn was that Appellant's actions were specifically directed at one individual, and there was more than sufficient evidence to find that the actions were committed with malice aforethought.

The trial court instructed the jury as to first degree manslaughter perpetrated in the heat of passion instead of giving Appellant's requested instruction for first degree manslaughter with a dangerous weapon. Appellant's claim that the instruction was warranted because of his testimony alleging self-defense is unpersuasive, especially in light of our determination that there was no evidence to support a self-defense claim. As such, we find the refusal to give the requested instruc-tion, allowing the jury to consider the crime was committed with a dangerous weapon but without a design to effect death, was not error.

 We likewise find no merit in Appellant's claim that the jury should have been instructed as to second degree felony murder as it is not a lesser included offense of first degree malice aforethought murder. *Ross v. State,* 717 P.2d 117, 121 (Okl.Cr.1986), *aff'd,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). The trial court properly refused the instruction.

 At Proposition XIII, Appellant complains it was fundamental error for the trial court to fail to define the term "reasonable doubt" for the jury. It is well settled that the term "reasonable doubt" is self-explanatory and it is error for the trial court or prosecutor to attempt to define it for the jury. *Summers v. State,* 704 P.2d 91, 92 (Okl.Cr.1985); *Underwood v. State,* 659 P.2d 948, 951 (Okl.Cr.1983). We find no reason to change our position on this matter.

## SECOND STAGE PROCEEDINGS

 Appellant claims at Proposition IX that the verdict form delineating the two aggravating circumstances charged here was fundamentally flawed, requiring reversal of his death sentence. We disagree. Initially, it should be noted that Appellant agreed to the verdict forms as submitted to the jury. There is no claim that the jury was not properly instructed as to the aggravating circumstances charged, rather Appellant's claim is that the instruction was not repeated on the verdict form. Appellant cites no authority for this position. We will not do it for him. *VanWoundenberg v. State,* 720 P.2d at 335.

 At Proposition XII, Appellant claims his death sentence must be vacated as the jury was allowed to consider evidence of his unadjudicated crimes and bad acts during second stage. We note that Appellant testified to a number of those bad acts and crimes during direct examination in first stage.[15]

---

**15.** The State incorporated the first stage testimony into the second stage proceedings. Terry Jo

Frederick testified to numerous unadjudicated offenses committed by Appellant against her in

This Court has held, and continues to hold, that unadjudicated offenses may be introduced during the second stage of a capital trial to support the continuing threat aggravating circumstance. *Paxton v. State,* 867 P.2d 1309, 1322 (Okl.Cr.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 227, 130 L.Ed.2d 153 (1994); *Walker v. State,* 826 P.2d 1002, 1007 (Okl.Cr.1992), *cert. denied,* 506 U.S. 898, 113 S.Ct. 280, 121 L.Ed.2d 207 (1992); *Johnson v. State,* 665 P.2d 815, 822–23 (Okl.Cr.1982).

Appellant alleges at Proposition IV various instances of prosecutorial misconduct during second stage proceedings. At IV.A. he claims the State improperly attacked defense counsel and attempted to inflame the passions of the jury. Appellant objected to the State's argument that defense counsel was asking for a "hung jury". Upon objection, alleging that he had asked for no such thing, the court refused to sustain the objection or grant a mistrial, stating that defense counsel, without saying the words "hung jury" had said during closing, more than once, that there could never be a death verdict if even one of the jurors failed to agree to the death penalty. Reversal will occur only when argument by the State is grossly improper and unwarranted on some point which may affect the defendant. *Shelton v. State,* 793 P.2d 866, 871 (Okl.Cr.1990). We do not find that the trial court erred in failing to sustain the objection or grant a mistrial based on the State's summation and refutation of defense counsel's statements.

At subproposition IV.B., the claim advanced is that the State personally attacked defense counsel and attempted to invoke societal alarm during second stage closing. The comments in question centered around defense counsel's characterization of the confrontation between Appellant and Frederick as a domestic violence situation, which he claimed was insufficient to find

Appellant a continuing threat to society.[16] The jury did not find the Appellant a continuing threat, so we are hard-pressed to find any prejudice with respect to this claim. Instead, the references by the State, wherein counsel referred to defense counsel by name, were a summation of and response to this argument advanced by defense counsel.[17] *Id.* This argument is without merit.

Appellant then alleges at subproposition IV.C. the State accused him of lying. The same argument was advanced and rejected with respect to the first stage proceedings. Appellant testified he would have done anything to avoid detection for the crime, therefore the State's comments on his veracity were proper and not error. *Fritz v. State,* 811 P.2d at 1359; *Thomason v. State,* 763 P.2d at 1183; *Goulsby v. State,* 742 P.2d at 571; *Robertson v. State,* 521 P.2d at 1402.

Subproposition IV.D. advances the argument that the State improperly requested jury sympathy for the victim. As the comments were not objected to at trial, Appellant has waived all but plain error with respect to the same. *Simpson v. State,* 876 P.2d at 693; *Jones,* 772 P.2d at 925; *Van-Woundenberg,* 720 P.2d at 334. We find none. While the comments made concerning Frederick's status as a hard working mother, caring daughter and adoptive mother were irrelevant to the crime committed, we cannot say that they rose to the level of plain error. Descriptions of Frederick as a mother concerned with the abuse her daughter suffered at Appellant's hands, and the request that the jury do justice in this case, were not error.

Appellant then claims the State commented on facts not in evidence during second stage thereby prejudicing him (Proposition IV.E.). A review of the statements in question reveals they were reasonable infer-

---

support of the continuing threat aggravator, but the jury did not find Appellant to be a continuing threat.

16. The State alleged two aggravators in seeking the death penalty: that the murder was especially heinous, atrocious or cruel, and that Appellant constituted a continuing threat to society.

17. This is not to suggest that counsel for the State acted appropriately in repeatedly referring to defense counsel by name, but we do not find those comments alone sufficient, in this instance, to constitute a "personal attack" resulting in prejudice to Appellant requiring reversal or modification.

ences drawn from the testimony and evidence presented at trial. *Allen,* 871 P.2d at 96; *Trice,* 853 P.2d at 214; *Nguyen,* 769 P.2d at 172; *Winterhalder,* 728 P.2d at 853. Additionally, Appellant's objection to the comment concerning Appellant's lifelong reputation for violence was sustained, and the prosecution corrected the statement, referring instead to Appellant's propensity for violence throughout his relationship with Terry Jo Frederick. As such, we find that the error was cured with no resulting prejudice, especially since the jury failed to find the existence of the continuing threat aggravator.

■ The statements complained of at subproposition IV.F. were not objected to at trial, waiving all but plain error. *Simpson,* 876 P.2d at 693; *Jones,* 772 P.2d at 925; *VanWoundenberg,* 720 P.2d at 334. The first comment went to the State's recommendation for punishment, which was that Appellant should receive the death penalty. The second statement was the State's argument of the proper and just punishment for Appellant to receive "under the law and evidence presented in this case." We do not find that the comments were outside the scope of fair argument. While the prosecutor certainly argued that the evidence justified a verdict of guilty, there was no articulation of a personal opinion. We are unable to agree with Appellant that any error occurred. *Millwood v. State,* 721 P.2d 1322, 1326 (Okl.Cr.1986); *Rogers v. State,* 721 P.2d 820, 825 (Okl.Cr. 1986); *Hartsfield v. State,* 722 P.2d 717, 720 (Okl.Cr.1986).

■ Finally, Appellant claims at subproposition IV.H. that the State asked jurors to consider Lois Frederick's rights in reaching their decision. Appellant failed to object to the comment when made, therefore we review for plain error only. *Simpson,* 876 P.2d at 693. A review of the record reveals none. We do not find that the referenced comment was error so as to prejudice Appellant, especially in light of the overwhelming evidence presented and Appellant's testimony at trial.

■ Appellant alleges at Proposition XVI that the instruction concerning mitigating circumstances contains permissive language leaving open the possibility that the jury ignored the mitigating evidence altogether. Once again Appellant fails to reach the proper conclusion with his analysis. He fails to cite to this Court exactly which mitigating factors the jury was precluded from considering, what facts showing there was no consideration given to the factors, and the prejudice caused by this alleged failure. We note that the jury was properly instructed as to the definition of mitigating evidence. They could consider any and all mitigating evidence they found applicable to the facts and circumstances of the case; they were not limited to the minimum mitigating circumstances, if any, found from the evidence in the case; and what was or was not a mitigating circumstance was a determination for the jury to make. The instructions given correctly stated the applicable law. *See McGregor v. State,* 885 P.2d 1366, 1383 (Okl.Cr. 1994); *Bryson,* 876 P.2d at 262; *Brown v. State,* 871 P.2d 56, 77 (Okl.Cr.1994), *cert. denied,* — U.S. —, 115 S.Ct. 517, 130 L.Ed.2d 423 (1994); *Paxton,* 867 P.2d at 1325; *Pickens v. State,* 850 P.2d 328, 339 (Okl.Cr.1993), *cert. denied,* — U.S. —, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994).

■ Appellant then claims at Proposition XVIII that he should have been allowed to present evidence of the cost effectiveness of the death penalty in mitigation of the imposition of that punishment. Appellant's request was properly denied by the trial court as such evidence is irrelevant, and does not qualify as mitigating evidence, having no bearing on Appellant's character, prior record, circumstances of the offense committed or Appellant's future conduct. *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); *Hooker v. State,* 887 P.2d at 1367; *Mitchell,* 884 P.2d at 1203.

In his nineteenth proposition of error, Appellant claims the "victim impact" evidence presented during second stage was not properly weighed by the trial court prior to admission. We have previously determined that victim impact evidence is a relevant consideration for Oklahoma capital sentencing juries. *See Mitchell,* 884 P.2d at 1205; *Freeman v. State,* 876 P.2d 283 (Okl.Cr.1994), *cert. denied,* — U.S.—, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994). Additionally, Appellant

did not object to the introduction of the testimony at trial, waiving all but plain error. *Simpson*, 876 P.2d at 693 (*citing Jones v. State*, 772 P.2d at 925 (Okl.Cr.1989)). We find no error here.

■ Appellant then alleges it was error to refuse to allow him to personally address the jury. Appellant's counsel was allowed, as is required by statute, to address the jury on his behalf. 21 O.S.1991, § 701.10(D). More importantly, Appellant addressed the jury when he testified at trial. Appellant's cited authorities are inapplicable to the argument he now advances in that they address a defendant's right to address the court prior to formal sentencing. Appellant was given the opportunity to address the trial court prior to formal sentencing and chose to make no statement. As such, his request for allocution was granted and he cannot claim prejudice now because he chose not to avail himself of that opportunity. *See Mitchell*, 884 P.2d at 1205. Appellant attempted here, instead, to make an unsworn statement to the jury in addition to his sworn testimony and the statement made on his behalf by defense counsel. We rejected this same argument in *Freeman*, 876 P.2d at 289–90.[18] We find no error here.

Appellant, at Proposition VII, requests this Court vacate his death sentence claiming there was insufficient evidence presented to support the jury's finding that the murder was "especially heinous, atrocious or cruel". We refuse.

■ Evidence supporting a finding that a murder was especially heinous, atrocious or cruel requires proof that the death was preceded by torture or serious physical abuse. *Revilla v. State*, 877 P.2d 1143, 1155 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 764, 130 L.Ed.2d 661 (1995); *Stouffer v. State*, 742 P.2d 562 (Okl.Cr.1987) *cert. denied*, 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988); *Fox v. State*, 779 P.2d 562, 576 (Okl.Cr.1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990); *Fowler*, 779 P.2d at 588; *Foster v. State*, 779 P.2d 591 (Okl.Cr.1989), *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3293, 111 L.Ed.2d 801 (1990);

*Rojem v. State*, 753 P.2d 359, 369 (Okl.Cr. 1988), *cert. denied*, 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 238 (1988). As we have been called upon to examine the condition of "serious physical abuse", we have found it to be supported by facts revealing not only the manner of killing, but the killer's attitude, and the suffering of the victim. *See Williamson*, 812 P.2d at 384; *Thomas v. State*, 811 P.2d 1337, 1349 (Okl.Cr.1991), *cert. denied*, 502 U.S. 1041, 112 S.Ct. 895, 116 L.Ed.2d 798 (1992); *Nuckols v. State*, 805 P.2d 672, 675 (Okl.Cr.1991), *cert. denied*, 500 U.S. 960, 111 S.Ct. 2276, 114 L.Ed.2d 727 (1991); *Nuckols v. State*, 690 P.2d 463 (Okl. Cr.1984), *cert. denied*, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985). As we noted in *Robinson v. State*, 900 P.2d 389 (Okl.Cr.1995) there is no uniform criteria, applicable to all murder cases, which would make the application of the "heinous, atrocious or cruel" aggravator a mechanical procedure. Instead, the examination of the facts of each and every case is a prerequisite in determining whether the aggravator was proved. Since no two cases present identical fact scenarios for our consideration, resolving a sufficiency of the evidence claim supporting the heinous, atrocious or cruel aggravator requires that we focus our inquiry on the particulars of each case as opposed to one case's similarity to another. *Id.*

■ The evidence presented, much of it in the form of Appellant's direct testimony, indicated that he arrived, uninvited, at the victim's house at approximately 4:00 p.m., ostensibly to look for his girlfriend. A quick search of the house and garage revealed that she was not there, yet Appellant did not leave until almost 2½ hours later. During that time he admitted to pushing the decedent backward over two tables, causing her to fall and injure herself; to destroying her telephone so she could not call the police; to punching her in the face and making her nose bleed; and to hitting her hard enough with a croquet mallet to knock her dentures from her mouth. Although Appellant claimed Frederick did not move after he hit her, and that he hit her only once, physical evidence at the scene indicated the victim bled profusely at numerous locations throughout the residence. Blood spatter evidence, and expert testimony to the same,

---

18. The distinction between *Freeman* and Appellant's case is that Freeman did not testify at trial.

indicated there was more than one blow with the croquet mallet. Cups located in the living room and bedroom showed bloody lip prints, suggesting the victim had been conscious enough to drink from containers at least twice before being beaten and/or bludgeoned into a state of unconsciousness, if indeed she ever reached that point. Appellant further claimed he had placed the victim in her car with her head facing the driver's side of the vehicle, and that she did not move after being placed in the car. However, photos of the crime scene showed the victim's burned body with her head and torso facing the passenger's side of the vehicle, and at least one witness to the burning testified he saw her leg move as he tried to extinguish the fire. Overall, we find there was more than sufficient evidence for the jury to find the murder was heinous, atrocious or cruel. We find no error here.

Appellant alleges at Proposition VIII that the heinous, atrocious or cruel factor is facially invalid, fails to channel the jury's discretion and deprived him of a fair and reliable sentence. We have repeatedly rejected this argument, and will not revisit the issue here. *See Hogan v. State,* 877 P.2d 1157, 1168 (Okl.Cr.1994); *Romano,* 847 P.2d at 368; *Fisher v. State,* 845 P.2d 1272 (Okl.Cr.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3014, 125 L.Ed.2d 704 (1993); *Williamson,* 812 P.2d at 408; *Clayton,* 840 P.2d at 31; *Thomas,* 811 P.2d at 1348; *Moore v. State,* 788 P.2d 387, 401 (Okl.Cr.1990), *cert. denied,* 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 182 (1990); *Rojem,* 753 P.2d at 369.

Proposition XIV alleges error in that the jury was not instructed that their decision on mitigating circumstances did not have to be unanimous. Appellant cites to *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) and *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) in support of this proposition. We have addressed this issue in light of the *McKoy* and *Mills* decisions and find the argument to be without merit. *See Bryson,* 876 P.2d at 262; *Pickens,* 850 P.2d at 339–40; *Clayton,* 840 P.2d at 34; *Castro v. State,* 844 P.2d 159, 176 (Okl.Cr.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 135, 126 L.Ed.2d 98 (1993); *Stiles v. State,* 829 P.2d 984, 987 (Okl.Cr.1992).

Appellant alleges at Proposition XV that the trial court erroneously instructed the jury on the burden of proof required to find that the aggravating circumstances outweighed the mitigating evidence sufficiently to impose the death penalty. The jury was instructed that the State had to prove the existence of the aggravating circumstances beyond a reasonable doubt and weigh them against the mitigating factors.

▇▇ Specific standards for balancing aggravating and mitigating circumstances are not constitutionally required. *See Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); *Mitchell,* 884 P.2d at 1206; *Trice,* 853 P.2d at 215; *Romano,* 847 P.2d at 392; *Sellers v. State,* 809 P.2d 676, 691 (Okl.Cr.1991), *cert. denied,* 502 U.S. 912, 112 S.Ct. 310, 116 L.Ed.2d 252 (1991). The jury has complete discretion to balance the aggravating circumstances against those in mitigation and determine whether one is outweighed by the other. *See Mitchell,* 884 P.2d at 1206; *Johnson v. State,* 731 P.2d 993, 1004 (Okl.Cr.1987), *cert. denied,* 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987); *Jones v. State,* 648 P.2d 1251 (Okl.Cr.1982), *cert. denied,* 459 U.S. 1155, 103 S.Ct. 799, 74 L.Ed.2d 1002 (1983). We have consistently rejected this argument and do so again here. *See Revilla,* 877 P.2d at 1153, *Malone v. State,* 876 P.2d 707, 715 (Okl.Cr.1994); *Ellis,* 867 P.2d at 1301; *Trice,* 853 P.2d at 216; *Woodruff v. State,* 846 P.2d 1124, 1149 (Okl. Cr.), *cert. denied,* —— U.S. ——, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993).

▇▇ Appellant alleges at Proposition XVII he was entitled to an instruction on the presumption of life, guaranteeing a person convicted of murder the right to live incarcerated for life unless the State demonstrates beyond a reasonable doubt that death is the only appropriate penalty. Appellant cites no relevant authority in support of this proposition, choosing to ignore cases where we have considered this same argument and rejected it. *See Malone,* 876 P.2d at 713; *Allen,* 871 P.2d at 103; *Brown,* 871 P.2d at 73; *Trice,* 853 P.2d at 215; *Fox,* 779 P.2d at 574; *Boyd v. State,* 839 P.2d 1363, 1372 (Okl.Cr.1992); *Battenfield v. State,* 816 P.2d 555, 564 (Okl. Cr.1991), *cert. denied,* 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992); *Duvall,* 825 P.2d at 633. We reject it here also.

Proposition XX alleges the "anti-sympathy" instruction given during the first stage of trial, and incorporated by reference into the second stage, was fundamental error in that it may have precluded the jury from considering mitigating evidence presented during second stage. We reject this argument as we have on numerous occasions. *See Romano,* 847 P.2d at 392; *Fox,* 779 P.2d at 574; *Woodruff,* 846 P.2d at 1149; *Fisher v. State,* 845 P.2d at 1277; *Clayton,* 840 P.2d at 34; *Boyd,* 839 P.2d at 1372.

We likewise reject Appellant's claim that it was error for the trial court to refuse to instruct the jury that sympathy and mercy for Appellant were valid considerations in weighing and evaluating the mitigating evidence. Appellant cites no controlling authority for this position, and we will not do it for him. As to an instruction on the consideration of mercy and Appellant's individual circumstances, the jury was given a list of twelve mitigating factors and instructed that they could consider those and any other mitigating circumstances they found from the evidence presented. These instructions enabled the jury to make a reasoned decision on the appropriateness of the death sentence based upon the unique and individual circumstances of Appellant's case. The instruction as given specifically informed the jury that they could use mercy and fairness, and is adequate. *See McCracken v. State,* 887 P.2d 323, 333 (Okl.Cr.1994); *Malone v. State,* 876 P.2d at 714; *Robedeaux v. State,* 866 P.2d 417, 434 (Okl.Cr.1993).

At Proposition XXI, Appellant claims error in the trial court's failure to instruct the jury that it could return a sentence of life or life without parole regardless of its finding of mitigating and aggravating circumstances. There is no requirement for, nor right to, such an instruction. We have repeatedly rejected this argument and do so again here. *See Malone,* 876 P.2d at 714–715; *Allen,* 871 P.2d at 102; *Brown,* 871 P.2d at 73; *Robedeaux,* 866 P.2d at 435; *Pickens,* 850 P.2d at 339; *Fox,* 779 P.2d at 573; *Ro-*

*mano,* 847 P.2d at 391; *Woodruff,* 846 P.2d at 1149; *Walker v. State,* 723 P.2d 273, 284 (Okl.Cr.1986), *cert. denied,* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986).

Appellant's final allegation, presented at Proposition I, is that he was denied the opportunity to be heard regarding the trial court's proposed responses to jury questions, in violation of 22 O.S.1991, § 894 [19] as well as his rights under the Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution. He also complains that the questions, arguments and responses were not preserved for the record. We are somewhat confused by Appellant's claim now that he was not allowed to be heard at all, when he claims that there was an insufficient record of the proceedings. Nevertheless, his claim centers around statements, which are in the record, from which he presumes both error and prejudice.

The record reflects the following chain of events. The jury was sent out to deliberate punishment at 2:10 p.m. At 9:15 p.m., the jury was returned to the courtroom, after being sent to dinner at 6:35 p.m. The Appellant and his counsel were present as were attorneys for the State. The foreperson was asked how the jury stood, numerically, at that time, to which the response was "8, 2 and 2." A bench conference was had where counsel for both sides presented arguments concerning the propriety of giving the jury an *Allen* [20] instruction. During that discussion, the trial court stated:

> **Court:** Before they went to dinner there was an indication that they are considering [sic] difficulty with the question they asked about life without parole.

This is the only mention in the record of such a question.[21] Defense counsel, immediately following that statement, continues with his argument concerning the *Allen* instruction. The record indicates no expression of surprise concerning question # 1 nor any indication that defense counsel was unaware that the question had been asked. From the record before us, we can safely surmise only that an unknown question was asked, and,

---

19. Sec. 894. "After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the

district attorney and the defendant or his counsel, or after they have been called."

20. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); OUJI–CR 91, Deadlocked Jury Charge.

21. For simplicity's sake, we will refer to this as question # 1. There is no record of the actual

whether answered or unanswered, defense counsel was aware of the question and did not object to it, thereby waiving any error.

Upon continuing the bench discussion, defense counsel remarked on the jury's indication that they were not hopelessly deadlocked, to which the following response was given:

Court: You're right in the statement they haven't indicated to the Court they are hopelessly deadlocked. They have indicated that they—by their question, "What will happen if we cannot reach a unanimous decision?" [22] **Which the Court did not answer as you well know.** (emphasis added) I am about to ask the foreman if she believes further deliberation will be fruitful. I am going to inquire of the foreman and see.

At the conclusion of the bench discussion, the foreperson was asked, in open court, the following question:

Court: Ms. Alfonso, I am going to pose another question to you. You being the foreperson of the jury. Do you believe that further deliberation by the jury can be fruitful?

Juror Alfonso: Yes.

Court: Okay. You indicated to me in an earlier note by way of a question, **which I did not answer,** that the jury was having some difficulty.

Juror Alfonso: Yes, sir.

Court: This is my interpretation of your question.

Juror Alfonso: Yes, sir.

Court: Is that a fair interpretation? Then I am going [to] ask that you go back and return to the jury room and continue your deliberations.

(Thereupon, the jury returned to the jury deliberation room.)

Mr. Albert (defense): May I approach? Your honor, do I understand from the foreman's response to the Court's question that further deliberation could be fruitful?

Court: That is what I understood her to say.

Appellant concludes, from this exchange, that some question was asked of the trial court, to which the trial court responded, without Appellant or his counsel being present.

A complete review of the relevant portion of the record which was preserved indicates that Appellant's claims as to the answering of questions outside of his presence and without his knowledge or consent are unfounded. From the exchange recorded on the record, we know that the jury asked questions which were never answered by the trial court, either in or out of defense counsel's presence. Defense counsel was quite aware not only that questions had been asked, but that no answer had been given by the court.

Appellant's complaint is premised on the grounds that he was prejudiced by not being present during the answering of the jury's questions. In *Boyd v. State*, 572 P.2d 276 (Okl.Cr.1977), we stated that the purpose of Section 894 was to prevent communications from being made to the jury without the parties being present to protect their interests. *See Smith v. State*, 659 P.2d 330, 336 (Okl.Cr.), *modified in* 464 U.S. 924, 104 S.Ct. 324, 78 L.Ed.2d 297 (1983). Furthermore, a presumption of prejudice arises when communication between judge and jury occurs after the jury has retired for deliberation. *Givens v. State*, 705 P.2d 1139 (Okl.Cr.1985).

However, we find this case analogous to *Brown v. State*, 530 P.2d 1056, 1058 (Okl.Cr. 1975). In *Brown* we found no presumption of prejudice arises in cases where the communication complained of occurred with the knowledge and consent of defense counsel during the second stage of trial and, in that case, constituted a simple negative response imparting no additional knowledge or instruction to the jury. We found that any objection was waived, that no presumption of prejudice arose and that same did not constitute error. *Id.*, *(citing Goodwin v. State*, 506 P.2d 571 (Okl.Cr.1973)) and *Choate v. State*, 476 P.2d 384 (Okl.Cr.1970). We reached the same conclusion in *Reynolds v. State*, 575 P.2d 628, 633 (Okl.Cr.1978).

■ This case differs from *Brown* and *Reynolds* only in that we know that no an-

---

wording of the question, nor is there any indication of the time the question was asked.

**22.** Here we have question # 2, also unanswered.

swer was given to question #2. However, the result was the same. There was no objection from defense counsel; the action taken was apparently done with counsel's knowledge and consent; and the jury was given no additional knowledge or instruction due to the court's failure and/or refusal to answer the questions. As such, there is no presumption of prejudice, and the objection is waived for all but plain error review. *Simpson*, 876 P.2d at 693. We find this claim to be without merit, as we find there was no communication with the jury, with or without defense counsel being present.

We are intrigued then by the question arising from the trial court's failure to respond: was it error for the trial court not to answer the jury's questions at all? Appellant's cited authority begs the question in that it deals with a case of *ex parte* communications between a judge and deliberating jury. *U.S. v. Carter*, 973 F.2d 1509, 1515 (10th Cir.1992). There is no question that Appellant is entitled to be present when the trial court answers jury questions. We do not have that problem here. Likewise, Appellant's reliance on *Simmons v. South Carolina*, 512 U.S. ——, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) is misplaced in that the question there centered on the trial court's failure to *correctly* answer the jury's question concerning the sentencing options available in a situation where the Appellant was not eligible for parole under state law having previously been convicted of violent offenses. We do not face the same question.

■ Our analysis of Appellant's claim is limited to a review for plain error, as there was no objection to the trial court's actions. *Simpson*, 876 P.2d at 693. In short, we find no authority for Appellant's claim that the trial court is required to answer questions submitted to it by the jury. Rather, our position has been, and continues to be, that while the jury may ask questions, the statute governing response to the same has been construed to be mandatory only with regard to bringing the jury back into the courtroom, and the determination of whether the jury's request is granted lies within the discretion of the trial court. *Boling v. State*, 589 P.2d 1089, 1092 (Okl.Cr.1979); *Glaze v. State*, 565 P.2d 710 (Okl.Cr.1977). Recognizing that the *Glaze* jury requested a replay of witness testimony, we note the distinction between this case (failure to answer a question) and *Glaze* (denial of jury's request to re-hear testimony). However, we also found no abuse of discretion where the trial court responded to a juror's request to ask a question: "Now, once the evidence is in, we cannot have any further questions, or I can't answer any questions." *Glaze*, 565 P.2d at 713. In the instant case, no effort was made to answer the questions asked, which, effectively, is what the *Glaze* court did by refusing, from the outset of jury deliberations, to entertain any questions from the jury. There is nothing to indicate that the defendant was prejudiced by the failure to answer the jury's questions nor any indication of abuse of discretion.

■ More importantly, even if we were to find it error to fail to answer the jury's questions, our analysis here finds any error harmless beyond a reasonable doubt. Response to the trial court's questions posed to the jury indicated that further deliberations would assist the jury in reaching a verdict. The foreperson confirmed the trial court's interpretation of the jury's question prior to being called into the courtroom, but never requested at that time, or any time subsequent to being sent out for further deliberations, that the court answer the question. The question was never asked again, and the jury returned 1½ hours later with a verdict. We can only conclude that the jury reached its decision without being influenced by any answer that could possibly have been given by the trial court. To find error requiring reversal would require us first to speculate as to what the trial court's answer would have been, in response to each question. Based on those presumed answers, we would then have to find that the jury's verdict would have been different as a result of those answers. This we refuse to do.

■ Appellant's argument that he was denied effective assistance of counsel because no argument was advanced by defense counsel as to the proper answer to any jury questions is meritless.

We have reviewed the argument raised by Appellant and, having examined the record before us, we cannot say that the representation afforded Petitioner during the proceedings fell below the standard established in

*Strickland*[23]. The determining criteria is whether, but for counsel's alleged omissions or commissions, the result of the trial would have been different. We do not find that criteria here. A review of the record clearly shows defense counsel was not only aware of the questions asked by the jury but vigorously argued in support of Appellant's right to have the jury dismissed and have the trial court impose a sentence of life or life without parole. We find no error here.

## MANDATORY SENTENCE REVIEW

Pursuant to 21 O.S.Supp.1987, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of an aggravating circumstance as enumerated in 21 O.S.1981, § 701.12. After carefully weighing the aggravator and all mitigating evidence, we have determined that the "heinous, atrocious or cruel" aggravator upon which the death penalty was based was factually substantiated, and amply supported by the evidence presented at trial. We further find no indication in the record that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor.

We find no error present in Appellant's case warranting reversal, modification or dismissal, and therefore **AFFIRM** the judgment and sentence of the trial court.

JOHNSON, P.J., and CHAPEL, V.P.J. specially concur.

LUMPKIN and OWENS,[24] JJ., concur.

CHAPEL, Vice Presiding Judge, specially concurring:

We continue to see case after case where the jury sends a note to the trial judge during deliberations inquiring about the possibility of parole. The reason why jurors repeatedly ask this question is because they are confused. They want, need, and deserve an answer. I continue to believe we should fashion an instruction which clarifies this issue for the jury.[1] I am concerned about the ramifications of our failure to do so since it seems clear to me that some jurors may be voting for a death sentence only because they believe that life without parole really does not mean life without parole.

I therefore concur based on stare decisis.

---

**23.** We judge claims of ineffective assistance of counsel in light of the Supreme Court's guidelines established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We considered the application of the test in *Pierce v. State*, 786 P.2d 1255 (Okl.Cr.1990), and held:

> We have long held that allegation of incompetency of counsel will be judged by "whether counsel exercised the skill, judgment and diligence of a reasonably competent defense attorney in light of his overall performance." *Fisher v. State*, 736 P.2d 1003, 1011 (Okl.Cr.1987); *Cotton v. State*, 679 P.2d 1305, 1308 (Okl.Cr. 1984). In review of such a claim, we are to

accord a strong presumption that counsel was at least constitutionally competent. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We will not make this judgment in hindsight, second guessing counsel's trial strategy. *Dutton v. State*, 674 P.2d 1134 (Okl.Cr.1984).

**24.** Judge Owens was appointed to replace Judge Strubhar who recused.

**1.** See *Mayes v. State*, 887 P.2d 1288, 1324–25 (Okl.Cr.1994) (Chapel, J., dissenting), or *McGregor v. State*, 885 P.2d 1366, 1383 (Okl.Cr.1994) where I discuss this issue.